Mona L. Burton, #5399
Sherilyn A. Olsen, #9418
Ellen E. Ostrow, #14743
HOLLAND & HART LLP
222 S. Main Street, Suite 2200
Salt Lake City, UT 84101
Telephone: (801) 799-5800
Fax: (801) 799-5700
solsen@hollandhart.com
mburton@hollandhart.com
eeostrow@hollandhart.com
  *Proposed Attorneys for Debtor-In-Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH**

| In re: | Bankruptcy No. 16-24384 |
|---|---|
| M SPACE HOLDINGS, LLC, | Chapter 11 |
| Debtor-In-Possession. | Honorable _____ |

**MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO SECTIONS 105(a), 361, 362, 363, 506, 507, AND 552 OF THE BANKRUPTCY CODE: (I) AUTHORIZING THE USE OF COLLATERAL AND CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION AND LIEN; (III) SCHEDULING A FINAL HEARING, AND (IV) GRANTING RELATED RELIEF**

M Space Holdings, LLC ("**M Space**" or the "**Debtor**") moves the Court pursuant to sections 105(a), 361, 362, 363, 506, 507, and 552 of the United States Bankruptcy Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Bankruptcy Rules 4001-2 and 9013-1 (the "**Local Rules**") for an interim order (I) authorizing the use of collateral and cash collateral; (II) granting adequate protection and lien; (III) scheduling a final hearing; and (IV) granting related relief (the "**Motion**"). In support of the Motion, the Debtor respectfully states as follows:

1

**CONCISE STATEMENT OF THE RELIEF REQUESTED**

1. This motion seeks authority to use prepetition collateral and cash collateral and to provide adequate protection and lien to certain Secured Parties on the terms set forth in the proposed interim order attached hereto and, after a final hearing, in the proposed Final Cash Collateral Order (as defined below).

2. Absent this relief, the Debtor will not be able to successfully transition into Chapter 11, orderly liquidate its assets and administer the estate, and otherwise preserve and maximize the value of its assets for the benefit of its creditors and the estate during this case.

3. In particular, as reflected in the proposed cash flow budget attached hereto as **Exhibit A** (the "**Budget**"), the Debtor, in consultation with its advisors, projects that it will need access to approximately $1,028,000 in cash collateral to avoid irreparable harm to its orderly liquidation and administrative efforts from the Petition Date through June 2016 (the "**Interim Period**"). The prepetition collateral and cash collateral will be used to pay (i) amounts authorized for payment pursuant to other first day motions filed concurrently herewith, (ii) operating costs and expenses, and (iii) other administrative and bankruptcy related expenses projected to be incurred during the Interim Period, as set forth in the Budget.

4. On a final basis, the Debtor projects that it will need the ability to use cash collateral through the week ending October 31, 2016 (the "**Budget Period**").

5. As with any large Chapter 11 case, the use of cash collateral is essential to the Debtor's ability to efficiently preserve and maximize the value of its assets as it transitions into Chapter 11. The Debtor's primary source of cash collateral and ability to maximize value in this

2

case is dependent upon collecting future rents from leases of its modular units and performing an orderly sale of substantially all of its assets.

6.  As discussed in detail in the Declaration of Jeffrey D. Deutschendorf in Support of Chapter 11 Petition and Various First Day Motions ("**Deutschendorf Decl.**"), a confluence of factors occurring over a period of years has led to the filing of this case, including unsuccessful prior efforts to sell the company as a going concern and/or raise capital, and the substantial reduction of availability on the Debtor's line of credit.

7.  In the months leading up to the Petition Date, the Debtor conducted a sale process to identify possible equity, financing and/or asset sale transactions. That process generated interest from prospective purchasers but did not result in any binding agreements. Nonetheless, the Debtor believes the company still has value that can be realized through an orderly liquidation.

8.  During the Budget Period, with the benefit of the automatic stay and access to cash collateral, the Debtor intends to focus on conducting a sale of substantially all of its assets. Without access to the prepetition collateral and cash collateral at this critical point in the case, however, the Debtor will be unable to orderly liquidate its assets to maximize value for the benefit of its creditors and the estate.

9.  Prior to the Petition Date, the Debtor discussed with the Secured Parties (as the term is defined below), the Debtor's largest creditor, its current financial circumstances, the events leading to the filing of this case, and the overall liquidation strategy for the Debtor. The Debtor reviewed its cash flow projections in detail with the Secured Parties, and the parties agreed on terms for the consensual use of prepetition collateral and cash collateral.

10. Notably, it became imperative that the Debtor commence this case as soon as possible in order to preserve value. The agreed-upon use of prepetition collateral and cash collateral were negotiated in good faith and at arm's length and represent the best alternative available under these exigent circumstances.

11. For these reasons and those set forth below, it is critical the Debtor be able to use prepetition collateral and cash collateral to orderly liquidate its assets for the benefit of its creditors and the estate. Accordingly, the Debtor respectfully requests that the Court grant the relief requested in this Motion.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this case under 28 U.S.C. §§ 157 and 1334 and the automatic reference of all bankruptcy cases to this Court pursuant to DUCivR 83-7.1 of the Local Rules of Practice of the United States District Court for the District of Utah.

13. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

14. The Debtor's corporate headquarters and its executive level and senior management are all located in Park City, Utah and have been for the 180 days immediately prior to the Petition Date. Accordingly, venue of this case and related proceedings is proper in this District under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

15. The Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code on May 19, 2016 (the "**Petition Date**"). The Debtor continues in possession of its property and is operating and managing its business and affairs as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

16. No trustee or examiner has been appointed in this case. No official committee of unsecured creditors ("**Committee**") has yet been formed.

17. The Debtor is a provider of turnkey complex modular space solutions for rent and sale. M Space's primary client base are schools and the oil industry. *See* Deutschendorf Decl. ¶ 11.

18. On December 12, 2012, the Debtor entered into the Revolving Credit, Term Loan and Security Agreement (as amended, modified, and/or supplemented as of the Petition Date) (the "**Prepetition Credit Agreement**") with PNC Bank, National Association ("**PNC**"), as agent (the "**Agent**") for itself and HSBC Bank USA, National Association ("**HSBC**") (collectively, the "**Secured Parties**"). *See id.* ¶¶ 14–15.

19. As of May 18, 2016, pursuant to the Prepetition Credit Agreement, the Debtor was indebted to the Secured Parties, in the approximate non-contingent liquidated amount of $59,678,225 plus prepetition interest, fees, expenses, and other amounts arising under the Prepetition Credit Agreement (the "**Prepetition Obligations**"). *See id.* ¶¶ 15–16.

20. The Prepetition Obligations were secured by valid, enforceable, perfected liens and security interests (the "**Prepetition Lien**") encumbering substantially all assets of the Debtor as set forth in the Prepetition Credit Agreement (the "**Prepetition Collateral**"). *See id.* ¶ 15.

21. In early Spring 2016, M Space began experiencing cash shortages, and retained Oppenheimer Company ("**OpCo**") as its investment banker to evaluate options for selling M Space as a going concern and/or to raise junior capital. *See id.* ¶¶ 18–20.

22. On M Space's behalf, OpCo contacted over 100 private equity companies, mezzanine lenders, and B lenders, but a transaction never materialized. *See id.* ¶ 21.

23. In December 2015, the Secured Parties received an updated appraisal of M Space's assets. The appraisal concluded that the value of M Space's assets had declined significantly. As a result thereof, M Space's availability on the Line of Credit was reduced by approximately $1,500,000 in accordance with the provisions of the Prepetition Credit Agreement. *See id.* ¶ 22.

24. In February 2016, the Secured Parties were entitled to decrease the availability on the Line of Credit by approximately an additional $900,000 under the quarterly amortization provisions of the Prepetition Credit Agreement. The Secured Parties agreed to defer the scheduled amortization subject to certain terms and conditions, including M Space's retention of a chief restructuring officer. *See id.* ¶ 23.

25. In order to obtain this limited forbearance, M Space retained the services of Michael Correra of Conway MacKenzie, Inc. as chief restructuring officer of M Space. Mr. Correra presented numerous business options, including selling M Space as a going concern, liquidating M Space, and/or restructuring the Line of Credit with the Secured Parties. *See id.* ¶ 24.

26. Notwithstanding the deferral of the quarterly amortization by the Secured Parties, M Space's availability under the Prepetition Credit Agreement was constrained by both the borrowing base and the $60,000,000 maximum amount that M Space was contractually permitted to borrow (taking into account discretionary over-advances). As such, M Space has not been able to pay its debts as they come due and is experiencing increasing demands from creditors across the country. In one case, a creditor has obtained a preliminary injunction allowing it to collect rents directly on projects owned by M Space. *See id.* ¶ 25.

27. In order to address its creditors and obligations in one forum and to allow M Space time to conduct an orderly liquidation of its assets, M Space seeks relief under Chapter 11 of the United States Bankruptcy Code. *See id.* ¶ 26.

## RELIEF REQUESTED

28. The Debtor respectfully requests that the Court enter an interim order, substantially in the form attached hereto as **Exhibit B**, granting the following relief, among other relief, on an interim basis (the "**Interim Order**"):

> (a) Authorizing the consensual use of the Prepetition Collateral and Cash Collateral during the Interim Period in the amounts set forth in the proposed Budget and in accordance with terms set forth in the Interim Order;
>
> (b) Authorizing, the Debtor to make the payments contemplated by the proposed Budget during the Interim Period;
>
> (c) Granting the Secured Parties the adequate protection proposed in the Interim Order for the Debtor's use of the Prepetition Collateral and Cash Collateral, including without limitation for any diminution in value resulting from the payment of expenses provided for in the Budget and Interim Order; and
>
> (d) Granting the related relief as set forth in the proposed Interim Order.

29. The Debtor further requests that the Court schedule a final hearing as early as the Court's schedule will permit in June 2016 to consider granting the relief requested herein on a

final basis and entering a final order substantially in the form that will be filed with the Court in advance of the final hearing (the "**Final Order**").

(a) **DISCLOSURE AND SUMMARY OF MATERIAL TERMS**

30. Pursuant to Rule 4001 of the Bankruptcy Rules, the material terms of the use of the Prepetition Collateral and Cash Collateral are summarized in the Interim Order. In addition, pursuant to Local Rule 4001-2, the following supplements the Interim Order by addressing each of the provisions identified in Local Rule 4001-2 and identifying the location of the related provisions in the proposed Interim Order. In the event the Interim Order or the information set forth below conflicts or is otherwise inconsistent, the Interim Order shall govern. Capitalized terms used in this summary shall have the meanings assigned in the Interim Order.

| **Local Rule 4001-2 Provisions** | | |
|---|---|---|
| **Required Information/ Highlighted Provision** | **Summary** | **Location in Interim Order** |
| Cross-collateralization | None. Adequate protection lien on post-petition property will be granted to protect against diminution in value of prepetition collateral. | N/A |
| Provisions or findings of fact regarding validity, perfection or amount of secured party's lien or debt that bind the estate or all parties in interest | Subject to entry of a final order, the Debtor makes stipulations concerning these matters without prejudice to rights of any Committee or third parties to contest such matters within a defined period of time. | Order at 2–3, ¶ 18(a) |

| **Local Rule 4001-2 Provisions** | | |
|---|---|---|
| **Required Information/ Highlighted Provision** | **Summary** | **Location in Interim Order** |
| Provisions or finding of fact regarding relative priority of secured party's lien or debt and the lien or debt of a person not party to the stipulation | Subject to entry of a final order, the Debtor makes stipulations concerning these matters without prejudice to rights of any Committee or third parties to contest such matters. | Order ¶¶ 3–4 |
| 506(c) and 552(b) Waivers | Subject to entry of a final order, the Debtor has agreed to certain waivers under section 506(c) and 552(b) | Order ¶ 8(a), (b), and (d) |
| Provisions divesting Debtor of discretion in formulating a plan, administering the estate, or limiting access to the court to seek appropriate relief. | There are prohibitions against the entry of certain orders adverse to the Secured Parties absent consent or absent payment in full of all Obligations and Pre-Petition Indebtedness.<br><br>Certain Events of Default also include circumstances such as failing to obtain and maintain the employment and/or retention of Gordon Brothers Commercial & Industrial, LLC as asset disposition agent. | Order ¶¶ 9, 10 |
| Releases of liability for creditor's alleged prepetition torts or breaches of contract. | The Interim Order incorporates certain releases subject to the challenge rights of a Committee and other parties in interest. | Order ¶¶ 18(d), 19 |

| **Local Rule 4001-2 Provisions** | | |
|---|---|---|
| **Required Information/ Highlighted Provision** | **Summary** | **Location in Interim Order** |
| Waivers of avoidance actions | The Debtor, without prejudice to the rights of other parties and a Committee, waives any avoidance action against the Secured Parties. | Order ¶¶ 18(b) and (c), 19 |
| Automatic stay relief | Certain provisions provide for the vacating and/or modification of the automatic stay as necessary to implement the terms of the Interim Order.<br><br>Certain provisions also provide for automatic stay relief upon an Event of Default in favor of the Secured Parties. | Order ¶¶ 6, 11 |
| Waivers of procedural requirements for foreclosure mandated under applicable non-bankruptcy law | All Liens and Adequate Protection Liens are deemed automatically perfected without further action that may ordinarily be required under non-bankruptcy law. | Order ¶ 6 |
| Adequate protection provisions that create liens on claims for relief arising under sections 506(c), 544, 547, 548, and 549 of the Bankruptcy Code | Adequate protection liens will not be granted on avoidance actions brought pursuant to section 544, 547, 548, 550, and 553, but shall include other causes of action of the Debtor (including without limitation those arising under section 549 of the Bankruptcy Code). | Order ¶ 3 |

| Local Rule 4001-2 Provisions | | |
|---|---|---|
| **Required Information/ Highlighted Provision** | **Summary** | **Location in Interim Order** |
| Waivers, effective on default or expiration, of the debtor's right to move for a court order pursuant to section 363(c)(2)(B) authorizing the use of cash collateral in the absence of the secured party's consent | Absent the Agent's consent in writing, the Debtor shall not seek entry of any further orders in its Chapter 11 case pursuant to section 363(c)(2)(B). | Order ¶ 9 |
| Findings of fact on matters extraneous to the approval process | None | N/A |

## BASIS FOR RELIEF

### A. Authority to Use Cash Collateral

1. Section 363(c)(1) of the Bankruptcy Code authorizes a debtor-in-possession to use property of the estate in the ordinary course of business. To use cash collateral, however, one of two conditions must be satisfied: (1) each entity with an interest in the cash collateral consents to its use, or (2) the court, after notice and a hearing, authorizes such use. *See* 11 U.S.C. § 363(c)(2). In the latter instance, the court is instructed to prohibit or condition the use of cash collateral as is necessary to provide adequate protection for the interests of the secured party. *See* 11 U.S.C. § 363(e).

2. Generally, adequate protection can be provided through periodic cash payments, replacement liens, and such other relief that will result in the secured creditor receiving the indubitable equivalent of its interest in the cash collateral being used. *See* 11 U.S.C. § 361.

3.      The United States Court of Appeals for the Tenth Circuit has recognized that access to cash collateral at the beginning of a Chapter 11 case is critical to the prospects of a successful reorganization and that a bankruptcy court must be flexible in granting adequate protection. *See In re O'Connor*, 808 F.2d 1393, 1397–98 (10th Cir. 1987) ("In order to encourage the Debtors' efforts in the formative period prior to the proposal of a reorganization, the court must be flexible in applying the adequate protection standard.").

4.      In this case, ample cause exists to grant the Debtor authority to use the Prepetition Collateral and Cash Collateral during the Budget Period. First and foremost, PNC has consented to the use of the Prepetition Collateral and Cash Collateral on the terms set forth in the proposed Interim Order. Moreover, without the ability to use Prepetition Collateral and Cash Collateral, there will be no possibility for the Debtor to orderly liquidate its assets and maximize the value for creditors and the estate. The Debtor submits, and as has been agreed upon by the Secured Parties by way of their support and negotiation of the proposed Interim Order submitted to the Court, that whatever interests the Secured Parties may have in the Prepetition Collateral and Cash Collateral are adequately protected by virtue of the adequate protection provided for in the proposed Interim Order and Final Order, which is subject to an agreed Carve-Out (as defined in the proposed orders) and, in summary, includes:

- Replacement liens and security interests; and
- Superpriority administrative expense claims under section 507(b) of the Bankruptcy Code.

5.      In addition, pursuant to section 105(a) of the Bankruptcy Code, the Bankruptcy Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. The Debtor respectfully submits that the entry of an order

authorizing use of Prepetition Collateral and Cash Collateral under the circumstances is necessary and appropriate to enable it to orderly administer the estate and to maximize the value of its assets and should be approved.

6. The Debtor further submits that immediate relief in the form of the proposed Interim Order is necessary to avoid irreparable harm during the Interim Period. Absent approval, the Debtor will not be able to orderly liquidate and maximize the value of its assets.

7. Based upon the foregoing, using Prepetition Collateral and Cash Collateral is necessary and appropriate, is in the best interests of the Debtor and the estate, and should be authorized.

### B. Justification for Certain Provisions in the Proposed Interim Order and Final Order

8. As set forth above, the proposed Interim Order and Final Order contain certain provisions that appear in Local Rule 4001-2. Each such provision was specifically required by the Secured Parties, and the Secured Parties indicated they would not consent to the use of Prepetition Collateral and Cash Collateral without such provisions. The use of Prepetition Collateral and Cash Collateral represent the only viable way to orderly liquidate its assets, and the Debtor believes in its business judgment that these provisions are necessary and justified.

9. The Debtor negotiated the terms of the use of Prepetition Collateral and Cash Collateral with PNC over a period of multiple weeks in good faith and at arm's length and obtained the best possible deal that it could under the circumstances.

10. For these reasons, the Debtor respectfully asserts that the inclusion of each highlighted provision is justified under the circumstances and should be approved.

### C.      Final Hearing and Notice Procedures

11.     The Debtor proposes that it serve a copy of the Interim Order within three business days of its entry, together with a notice of the final hearing on the Motion (the "**Final Hearing Notice**"), by first class mail, facsimile, email or hand-delivery, on the Notice Parties (defined below) and on any party that files a request for notice pursuant to Rule 2002 of the Bankruptcy Rules. Any objections to the Motion or the entry of the Final Order shall (i) be in writing, (ii) be filed with the Bankruptcy Court by no later than 4 p.m. (Mountain) on the day that is not less than seven calendar days before the final hearing (the "**Objection Deadline**"), and (iii) be served upon the following parties so as to be actually received by the Objection Deadline: (a) the Office of the United States Trustee for the District of Utah, (b) counsel for the Debtor: Holland & Hart LLP, 222 South Main Street, Suite 2200, Salt Lake City, Utah 84101, Attn: Sherilyn Olsen and Ellen Ostrow, (c) counsel for PNC: Hahn & Hessen LLP, 488 Madison Avenue, New York, New York 10022, Attn: Joshua I. Divack, (d) counsel for HSBC: Phillips Lytle LLP, One Canalside, 125 Main St., Buffalo, NY 14203-2887, Attn: William J. Brown;  (e) counsel for any official committee that may be appointed in this case, and (f) all parties who have filed a request for notice pursuant to Bankruptcy Rule 2002.

### NOTICE

12.     Notice of this Motion has been given to (i) the Office of the United States Trustee for the District of Utah, (ii) counsel for the Secured Parties, (iii) the Debtor's mailing matrix, and (iv) all parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtor respectfully requests that the Court enter the Interim Order and, following the final hearing on this Motion, the Final Order granting the relief requested herein and such other and further relief as the Court deems just and proper.

Date: May 19, 2016

Respectfully submitted,

HOLLAND & HART LLP

*/s/ Sherilyn A. Olsen*
Sherilyn A. Olsen
Mona L. Burton
Ellen E. Ostrow
*Proposed Attorneys for the Debtor-In-Possession*

8766787_1