**This order is SIGNED.**



**Dated: May 25, 2016**

**JOEL T. MARKER**
**U.S. Bankruptcy Judge**



*jlt*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>M SPACE HOLDINGS, LLC,<br><br>Debtor-In-Possession | Bankr. Case No. 16-24384<br><br>Chapter 11<br><br>The Honorable Joel T. Marker |

### INTERIM ORDER AUTHORIZING DEBTOR'S
### USE OF COLLATERAL AND CASH COLLATERAL
### AND GRANTING ADEQUATE PROTECTION CLAIM AND LIEN

WHEREAS, on May 19, 2016 (the "Petition Date"), the above-captioned debtor, as debtor and debtor-in-possession (the "Debtor"), filed a voluntary petition for relief pursuant to Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"); and

WHEREAS, the Debtor has continued in the management and operation of its business pursuant to Bankruptcy Code §§ 1107 and 1108, and no trustee or examiner has been appointed; and

WHEREAS, the Debtor has moved the Court (the "Motion") for authority pursuant to Bankruptcy Code §§ 105(a), 361, and 363 , to use the Prepetition Collateral (as such term is defined herein) and Cash Collateral (as such term is defined in Bankruptcy Code § 363(a)) of PNC Bank, National Association ("PNC"), as agent (the "Agent") for the lenders (the "Lenders," and collectively with the Agent, the "Secured Parties") who are parties with the

Debtor to that certain Revolving Credit, Term Loan and Security Agreement dated as of

December 12, 2012 (as amended, modified, and/or supplemented as of the Petition Date, and

together with the "Other Documents" (as such term is defined therein), the "Prepetition Credit

Agreement" (a copy of which is annexed as an Exhibit to the Declaration of Jeffrey D.

Deutschendorf in Support of Chapter 11 Petition and Various First Day Applications and

Motions) pursuant to the terms and conditions of this Order and the Debtor's budget in the form

attached to the Motion as an Exhibit, as it may be amended, modified, and/or supplemented from

time to time with Agent's consent or non-objection (as the case may be, subject to the provisions

of paragraph "25" of this Order) (the "Approved Budget"); and

WHEREAS, the Debtor has admitted, represented and stipulated to the Court, without

prejudice to the rights of third parties set forth in this Order, the following (collectively, the

"Admissions"):

(a)    as of the Petition Date, pursuant to the Prepetition Credit Agreement,

(1) the Debtor was indebted to the Secured Parties, in the principal amount of

$59,678,225 as of May 18, 2016, plus prepetition interest, fees, expenses, and other

amounts arising under the Prepetition Credit Agreement, in respect of the Obligations

(such term, as defined therein, including without limitation all contingent and/or

unliquidated indebtedness and Obligations of the Debtor under the Prepetition Credit

Agreement, shall be defined in this Order as the "Prepetition Obligations"), and (2) the

Prepetition Obligations were secured by valid, enforceable, and perfected liens on and

security interests (the "Prepetition Lien") encumbering substantially all assets of the

Debtor as set forth in the Prepetition Credit Agreement (the "Prepetition Collateral"); and

(b)      the Debtor reasonably and in good faith believes that the Approved

Budget is sufficient to fund the projected legitimate and allowable expenses of its

Chapter 11 case from the Petition Date during the period to which the Approved Budget

pertains; and

WHEREAS, the Court held an interim hearing with respect to the Motion on May __,

2016 (the "Interim Hearing"), at which the Agent (a) represented to the Court that Lenders,

having assessed the Debtor's financial condition and prospects as of the Petition Date and the

existing and projected value of the Prepetition Collateral, were prepared to support the Debtor's

Chapter 11 case only as a "Chapter 11 liquidation" given that in their opinion a rehabilitative

Chapter 11 case is not achievable and would not maximize the value of the Debtor's assets, and

(b) in furtherance of the foregoing, consented to the entry of this interim Order at the direction of

the Lenders based upon the Approved Budget and the Asset Disposition Agent's (as such term is

defined below) liquidation plan; and

WHEREAS, at the Interim Hearing, all objections, if any, to the interim relief requested

in the Motion were withdrawn, resolved or overruled by the Court as reflected on the record of

the Interim Hearing;

THE COURT HEREBY FINDS AND DETERMINES THAT: [1]

(a)      the Debtor has given notice of the Interim Hearing, and the interim relief

sought in the Motion, that is sufficient and reasonable under the circumstances, and no

further notice relating to the hearings with respect to the Motion is necessary or required;

---

[1] To the extent any findings of fact constitute conclusions of law, they are adopted as such, and vice versa,
pursuant to Fed. R. Bankr. P. 7052.

(b)    the Court has core jurisdiction over the Debtor's bankruptcy case, the

Motion, and the parties and property affected by this Order pursuant to 28 U.S.C.

§§ 157(b) and 1334, and venue is proper before the Court pursuant to 28 U.S.C. §§ 1408

and 1409;

(c)    it is in the best interest of the Debtor's estate that it be allowed to use the

Prepetition Collateral and Cash Collateral, and to grant adequate protection of the

interests of the Agent in the Prepetition Collateral, on an interim basis under the terms

and conditions set forth herein, as such is necessary to permit the orderly administration

of the Debtor's estate;

(d)    in proposing the use of the Prepetition Collateral and Cash Collateral

pursuant to this Order and the Approved Budget, the Debtor has exercised prudent

business judgment consistent with its fiduciary duties; and

(e)    good and sufficient cause exists for the issuance of this Order, to prevent

immediate and irreparable harm to the Debtor's estate;

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.    The Motion is granted on an interim basis effective as of the time of

commencement of the Debtor's bankruptcy case on the Petition Date.  Nothing in this Order

shall preclude the Court from entering a final order with respect to the Motion (the "Final Cash

Collateral Order") containing provisions inconsistent with or contrary to the provisions of this

Order.

2.    The Debtor is authorized, pursuant to Bankruptcy Code §§ 105(a), 361, and 363,

to use the Adequate Protection Collateral (as such term is defined below), including without

limitation the Prepetition Collateral and/or Cash Collateral, and the proceeds and products thereof, solely in accordance with the terms and conditions of this Order, but only for the payment of (a) expenses set forth in the Approved Budget incurred prior to the date on which the Debtor's authorized use of the Adequate Protection Collateral ceases pursuant to the provisions of this Order following the occurrence of an Event of Default or upon the Expiration Date, and (b)  the Carve-Out (as defined below) (collectively but without duplication, the "Permitted Expenses").  All of the following terms and conditions of this Order, including without limitation the Debtor's covenants memorialized herein, shall constitute adequate protection of Agent's interests in the Prepetition Collateral and Cash Collateral, whether or not such terms, conditions and covenants are specifically denominated in the decretal paragraphs of this Order as being granted as adequate protection of such interests, and all of such adequate protection granted by this Order shall be without prejudice to Agent's right to seek additional adequate protection from the Court.

3.      Pursuant to Bankruptcy Code §§ 361, 362, and 363(e), as adequate protection for the Debtor's use of the Prepetition Collateral and Cash Collateral, including without limitation for any diminution in value resulting from the payment of Permitted Expenses, the Debtor is hereby authorized to and is hereby deemed to grant to Agent, for Agent and for the ratable benefit of each Lender, a lien, mortgage, and/or security interest (a "Lien," and as so granted to the Agent, the "Adequate Protection Lien") in all of the Debtor's presently owned or hereafter acquired property and assets, whether such property and assets were acquired before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, and the proceeds and products thereof (collectively, the "Adequate Protection

Collateral"), including without limitation (a) the Prepetition Collateral, (b) Cash Collateral, and (c) the proceeds of the Debtor's leases of real property (the "Lease Proceeds") (for the avoidance of doubt, the encumbrance of the Lease Proceeds pursuant to this Order shall not constitute a direct encumbrance of any real property lease itself unless such encumbrance is permitted thereunder).  Notwithstanding the foregoing, the Adequate Protection Collateral shall not include (i) causes of action brought pursuant to Bankruptcy Code § § 544, 547, 548, 550 and 553 and recoveries upon such causes of action, but shall include other causes of action of the Debtor (including without limitation those arising under Bankruptcy Code § 549) that are not within the scope of said statutory provisions and (ii) vehicles with certificates of title which PNC did not properly perfect a security interest in pre-petition.  The Debtor shall keep the Adequate Protection Collateral fully insured against all loss, peril and hazard and make Agent, for the ratable benefit of the Lenders, loss payee as its interests appear under such policies.

4.      The Adequate Protection Lien shall be a senior first priority Lien on the Adequate Protection Collateral, subject and junior only to (a) Permitted Expenses, and (b) valid, enforceable, properly perfected, and unavoidable prepetition Liens (including any Liens that are perfected after the Petition Date with a priority that relates back to a date prior to the Petition Date as permitted by Bankruptcy Code § 546(b)) held by parties other than Agent having a priority senior to the Prepetition Lien as to Prepetition Collateral ("Senior Third Party Liens").  The Adequate Protection Lien shall not be subject or subordinate to any Lien which is avoided and which would otherwise be preserved for the benefit of the Debtor's estate under Bankruptcy Code § 551.  The Adequate Protection Lien shall not be subject or subordinate to Liens arising after the Petition Date other than Liens granted by this Order to the extent set forth in this Order.

5.      In the event that the Adequate Protection Lien is insufficient, for any reason, as

adequate protection of Agent's interests in the Adequate Protection Collateral, Agent for itself

and for the ratable benefit of each Lender is hereby granted a post-petition administrative

expense claim (the "Adequate Protection Claim") against the Debtor's estate.  The Adequate

Protection Claim shall be an allowed administrative expense of the Debtor's estate in such

amount as is asserted by Agent or otherwise determined by the court after notice and a hearing,

and which shall have priority in payment over any other indebtedness and/or obligations now in

existence or incurred hereafter by the Debtor and over all administrative expenses or charges

against property arising in the Debtor's Chapter 11 case or any superseding Chapter 7 case,

including without limitation those specified in Bankruptcy Code § §  105, 326, 328, 330, 331,

503(b), 507(a), 507(b), 726, 1113 or 1114, subject only to the Carve-Out.  Notwithstanding the

foregoing, the Adequate Protection Claim shall only be paid after the Permitted Expenses are

paid in full.  The time of payment of the Adequate Protection Claim shall be in accordance with

applicable law.

6.      The automatic stay provisions of Bankruptcy Code § 362 are hereby modified to

permit (a) the Debtor and the Agent to implement and perform the terms of this Order, and (b)

the creation and perfection of all Liens granted by this Order.  The Debtor and the holders of

such Liens shall not be required to enter into any additional security agreements to create,

memorialize, and/or perfect such Liens, or to file UCC financing statements or other instruments

with any other filing authority or take any other action to perfect such Liens, which shall be and

are deemed valid, binding, enforceable and automatically perfected by the docket entry of this

Order by the Clerk of the Court.  If, however, the holders of such Liens in their sole and absolute

discretion shall elect for any reason to enter into, file, record or serve any such financing

statements or other documents with respect such Liens, then the Debtor shall execute same upon

request and the filing, recording or service thereof (as the case may be) shall be deemed to have

been made at the time and on the date of the docket entry of this Order by the Clerk of the Court.

7.    Notwithstanding the Prepetition Obligations, the Prepetition Lien, the Adequate

Protection Claim, and the Adequate Protection Lien, the Debtor may use the Adequate Protection

Collateral, to pay (the following subparagraphs, collectively, the "Carve-Out," and all amounts

payable in connection therewith, the "Carve-Out Amounts"):

(a)    the statutory fees of the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) and

any unpaid fees due and owing to the Clerk of the Court (collectively, the "Statutory

Fees");

(b)    the allowed fees and expenses of the professionals retained by the Debtor

and by any Official Committee of Unsecured Creditors (the "Committee"), whose

retentions are approved pursuant to final orders of the Court (the "Chapter 11

Professionals"), subject to the limitations on the use of such funds set forth in this Order,

(1) incurred before the giving of a Default Notice (as such term is defined below) or

Expiration Date, in accordance with the Approved Budget (whenever incurred prior to

the giving of a Default Notice, *i.e.*, amounts incurred in any week in excess of the

Approved Budget may be applied to prior or subsequent weeks), and (2) incurred after

the giving of a Default Notice or the Expiration Date, in an aggregate amount not to

exceed $35,000 with respect to the Debtor's and $10,000 with respect to the Committee's

respective Chapter 11 Professionals; and

(c)     the allowed fees and expenses of any Chapter 7 Trustee under Bankruptcy

Code § 726(b), including without limitation the allowed fees and expenses of the

professionals retained by the Chapter 7 Trustee and approved by final orders of the Court

(the "Chapter 7 Trustee's Professionals"), in aggregate amount not to exceed $10,000.

Following entry of this Order and on a weekly basis thereafter, the Debtor shall be authorized to

transfer funds to Holland & Hart's trust account in the amount designated as "Professional Fees"

in the Approved Budget.  The funds so deposited will be utilized to pay the fees and expenses of

Holland & Hart approved for payment pursuant to one or more orders of the Bankruptcy Court,

provided, however, that for the avoidance of doubt, fees and expenses payable to Holland & Hart

shall be paid first out of such account, and all amounts deposited in such account shall reduce, on

a dollar for dollar basis, the obligation of the Agent to fund the Carve-Out.  Any amounts paid

from the Adequate Protection Collateral or the proceeds thereof, or funded by the Secured

Parties, with respect to the Carve-Out shall be part of the Adequate Protection Claim secured by

the Adequate Protection Lien.  Notwithstanding the foregoing, (i) the funds designated as

"Professional Fees" shall not be deemed a cap on the professional fees to be incurred or paid to

Holland & Hart, (ii) any fees and costs to be paid to Holland & Hart in excess of the fees

designated as "Professional Fees" shall be paid from the funds designated as "Administrative

Reserve" in the Approved Budget, and (iii) in no event shall Holland & Hart be paid, from the

Adequate Protection Collateral or Proceeds (as such term is defined below), any amounts on

account of fees and expenses that are not Permitted Expenses.

8.     Effective as of the time of commencement of the Debtor's bankruptcy case on the

Petition Date, upon the entry of a Final Cash Collateral Order containing such provisions:

(a)    the Debtor waives irrevocably all claims and rights, if any, it or its estates might otherwise assert against the Adequate Protection Collateral pursuant to Bankruptcy Code § 506(c);

(b)    except with respect to Permitted Expenses to the extent provided for in this Order, no entity in the course of the Debtor's bankruptcy case shall be permitted to recover from the Adequate Protection Collateral (whether directly or through the grant of derivative or equitable standing in the name of the Debtor or the Debtor's estate) any cost or expense of preservation or disposition of the Adequate Protection Collateral, including, without limitation, expenses and charges as provided in Bankruptcy Code § 506(c);

(c)    no entity shall be permitted to assert against the Secured Parties any claim with respect to any unpaid administrative expense of the Debtor's bankruptcy case, whether or not the Debtor's payment of such administrative claim was contemplated by or included in the Approved Budget; and

(d)    the Secured Parties shall not be subject to the "equities of the case" exception of Bankruptcy Code § 552(b), or to the equitable doctrines of "marshaling" or any similar claim or doctrine, with respect to any Adequate Protection Collateral.

9.    So long as the Prepetition Obligations and/or the Adequate Protection Claim (collectively, the "Obligations") remain outstanding (other than contingent indemnity obligations as to which no claim has been asserted when all other amounts have been paid, provided that such obligations have been cash collateralized in an amount determined by the Agent in its reasonable discretion), unless consented to in writing by the Agent, the Debtor shall not seek

entry of any further orders in its Chapter 11 case which authorize (a) under Bankruptcy Code
§ 363, the use of Cash Collateral, (b) the obtaining of credit or the incurring of indebtedness
pursuant to Bankruptcy Code §§ 364(c) or 364(d) (unless such credit shall be used to repay the
Obligations in full), or (c) any other grant of rights against the Debtor or its estate that is secured
by a Lien in the Adequate Protection Collateral or is entitled to superpriority administrative
status.

    10.    Each of the following shall constitute an "Event of Default" for purposes of this
Order, except to the extent contemplated by the Approved Budget:

        (a)    the Court enters an order authorizing the sale of all or substantially all
assets of the Debtor that does not provide for the payment in full of the Obligations in
cash upon the closing of the sale, except to the extent contemplated by the Agreed
Budget;

        (b)    the Court enters an order granting relief from the automatic stay to a third
party with respect to material assets of the Debtor's estate; provided, however, it shall not
be an Event of Default should Hanover Insurance Group obtain relief from the automatic
stay respect to its rights and responsibilities under any performance and payment bonds
issued to the Debtor to the extent that such relief authorizes Hanover to collect and retain
accounts receivable otherwise due to the Debtor with respect to Houston Independent
School District, Greenfield Mass., and Apache Sky Casino, to the extent that Hanover has
a Senior Third Party Lien against such accounts receivable.

        (c)    the Court enters an order authorizing or compelling the Debtor's rejection
of executory contracts and/or unexpired leases, with respect to material assets of the

Debtor's estate including without limitation leaseholds, storage facilities, warehouse

facilities, or similar premises on which material assets of the Debtor's estate are located,

unless otherwise consented to by Agent; provided, however, the Debtor's rejection of

executory contracts and/or unexpired leases with Carter Leasing, LLC with respect to the

'Ponderosa' property in North Dakota shall not be an Event of Default;

(d)      the Debtor ceases operations of its present businesses or takes any material

action for the purpose of effecting the foregoing;

(e)      the Debtor's bankruptcy case is either dismissed or converted to a case

under Chapter 7 of the Bankruptcy Code pursuant to an order of the Court the effect of

which has not been stayed;

(f)      a Chapter 11 trustee, or an examiner with materially expanded powers

beyond those set forth in Bankruptcy Code §§ 1106(a)(3) and 1106(a)(4), or any other

responsible person or officer of the Court with similar powers is appointed by order of

the Court, the effect of which has not been stayed, in the Debtor's Chapter 11 case;

(g)      this Order is reversed, vacated, stayed, amended, supplemented or

otherwise modified in a manner which shall, in the sole opinion of Agent, materially and

adversely affect the rights of Secured Parties hereunder or shall materially and adversely

affect the priority of any or all of the Obligations and/or Agent's Liens;

(h)      the Debtor fails to obtain by June 20, 2016 and thereafter maintain the

employment and/or retention of Gordon Brothers Commercial & Industrial, LLC as asset

disposition agent (the "Asset Disposition Agent"), on terms and conditions (1) which

among other things shall vest the Asset Disposition Agent with primary responsibility for

developing and timely implementing an asset disposition program consistent with the

Approved Budget, and (2) which are otherwise acceptable to Agent in its discretion;

(i)        (1) the Debtor expends any funds or monies for any purpose other than

Permitted Expenses, or with respect to the line item "Other" of the Approved Budget

without Agent's prior consent, provided that the Debtor may utilize unused line item

amounts of the Approved Budget to increase the amounts available for other approved

line items set forth in the Approved Budget, (2) the Debtor expends any funds or monies

with respect to Permitted Expenses in excess of the amounts authorized therefor,

provided that (A) for the cumulative budget periods which have occurred the Debtor's

actual cash disbursements may be up to ten percent (10%) more with respect to any

Approved Budget line item in addition to any amounts reallocated pursuant to clause

"(1)" of this subparagraph, or five percent (5%) in the aggregate, than the cumulative

amount budgeted for cash disbursements through the conclusion of such budget periods

which have occurred without such expenditures constituting an Event of Default with

respect to any line item, and (B) amounts authorized in the Approved Budget for payment

during any budget period that are not timely paid may be paid in any subsequent budget

period, or (3) the Debtor, through the Asset Disposition Agent, fails to timely implement

the asset disposition program developed by the Asset Disposition Agent consistent with

the Approved Budget with time being of the essence with respect thereto, and/or fails to

timely achieve the cash inflows set forth in the Approved Budget with time being of the

essence with respect thereto;

(j)      the occurrence of a material adverse change, from and after the Petition

Date, including without limitation any such occurrence resulting from the entry of any

order of the Court, in (1) the condition (financial or otherwise), operations, assets,

business or business prospects of the Debtor, (2) the Debtor's ability to repay the

Obligations, and/or (3) the value of the Collateral;

(k)      any material and/or intentional misrepresentation by the Debtor in any

financial reporting or certifications to be provided by the Debtor to the Secured Parties;

and

(l)      non-compliance or default by the Debtor with any of the terms and

provisions of this Order; provided, however, that said non-compliance or default shall not

be deemed an Event of Default if curable and cured by the Debtor within five (5)

business days after notice of such non-compliance or default is given to the Debtor by

Agent, subject to the provisions of paragraph "12" of this Order with respect to the

"Weekly Reports" (as such term is defined below).

11.      Upon the occurrence of an Event of Default and the giving of written notice

thereof by the Agent or its counsel to counsel to the Debtor, the Committee (if any), and the U.S.

Trustee (which notice may be given by any manner of electronic transmission, the automatic stay

being deemed lifted for such purpose) (the "Default Notice") (it being acknowledged that the

giving of which, or the granting of formal or informal waiver or forbearance with respect thereto,

is subject to Agent's discretion vis-à-vis the Debtor, and subject to the provisions of paragraph

"25" of this Order), or upon the Expiration Date:

- 14 -

(a)        Agent shall have the right, free of the restrictions of Bankruptcy Code

§ 362 or under any other section of the Bankruptcy Code or applicable law or rule, to take

immediate reasonable action to physically protect the Adequate Protection Collateral

from harm, theft and/or dissipation (excluding the actions or remedies set forth in sub-

part "(c)" of this paragraph);

(b)        with respect to an Event of Default as to which a Default Notice has been

given other than an Event of Default under subsections "(d)" or "(e)" of the immediately

preceding decretal paragraph of this Order, the Debtor, the Committee (if any), and the

U.S. Trustee shall have five business days from the date of the Default Notice (the

"Remedy Notice Period") to (i) obtain an order of the Court on notice to the Agent

enjoining or restraining it from exercising rights and remedies based upon the Event of

Default specified in the Default Notice (a "Restraint on Remedies"), provided that a

Restraint on Remedies may be sought solely on the grounds of the non-occurrence or

timely cure of the Event of Default specified in the Default Notice or (ii) obtain a written

waiver of the Event of Default from the Agent; and

(c)        with respect to an Event of Default as to which a Default Notice has been

given and a Restraint on Remedies may be sought, immediately upon expiration of the

Remedy Notice Period unless a Restraint on Remedies has timely been obtained from the

Court; or with respect an Event of Default as to which a Default Notice has been given

under subsections "(d)" or "(e)" of the immediately preceding decretal paragraph of this

Order, immediately; or with respect to and upon the Expiration Date, immediately:

- 15 -

(1)      the authorized use of the Adequate Protection Collateral (including without limitation Cash Collateral) shall cease, and the Debtor, or any Chapter 7 Trustee or person described in subsection "(e)" of the immediately preceding decretal paragraph of this Order, shall account for and turn over to Agent all Cash Collateral and/or Proceeds (as such term is defined below) in the Debtor's or such person's possession, custody, or control, including without limitation any amount maintained as "Administrative Reserve" in accordance with the Approved Budget, other than amounts necessary to reserve for or fund the payment of Permitted Expenses;

(2)      the Agent shall have the right, free of the restrictions of Bankruptcy Code § 362 or under any other section of the Bankruptcy Code, (A) to exercise contractual, legal and equitable rights and remedies as to all or such part of the Adequate Protection Collateral as it shall elect, and (B) to apply the Proceeds (as such term is defined below) of the Adequate Protection Collateral in accordance with the priorities of Liens set forth by this Order;

(3)      as an additional non-exclusive remedy to the remedy set forth in the subparagraph immediately above, if requested by Agent at the direction of the Required Lenders (as such term is defined in the Prepetition Credit Agreement) pursuant to a notice filed with the Clerk of the Court accompanied by a form of proposed order, the Court may hold a hearing on an expedited notice to consider the entry of an order converting the Debtor's case to a case under Chapter 7 of the Bankruptcy Code, to determine  whether the requirements of Bankruptcy Code

§ 1112(b) have been satisfied; provided further that Agent's exercise of such

remedy shall be without prejudice to Agent's right to seek relief from the

automatic stay in this Chapter 11 case or in any such resulting Chapter 7 case);

(4)      the Agent, should it so elect in its sole and absolute discretion as

exercised by the filing of an appropriate statement with the Court, shall be

deemed to have been granted "peaceful possession" of, and right of access to, all

or any portion of the Adequate Protection Collateral by the Debtor, provided that

the Agent's right to use or occupy any of the Debtor's leased premises in

connection with the exercise of any right or remedy shall be subject to (A) the

rights of any lessor under any applicable pre-petition agreement and/or applicable

non-bankruptcy law, or (B) further order of the Court after notice and a hearing.

12.      The Debtor shall provide Agent with such written reports as Agent in its

reasonable discretion shall require, including without limitation (a) a rolling thirteen week cash

flow forecast updated no later than Wednesday of each second week in a form similar to the

Approved Budget, (b) a weekly report (the "Weekly Report") no later than Wednesday of each

week showing the Debtor's actual cash receipts and disbursements for the prior week and the

variances between such actual amounts and the amounts set forth in the Approved Budget for

such budget period, (c) a daily report of cash collections and disbursements, a/k/a a "Daily Cash

Tracker" report, (d) a weekly fixed asset report that tracks asset sales from and after the Petition

Date, showing disposition dates, estimated values as provided by the Asset Disposition Agent,

achieved values, and book values with respect to the assets sold, and (e) payroll reports, prior to

any payroll being originated, showing the employees being paid and type of pay (i.e., regular,

overtime, holiday, PTO, etc.).  Notwithstanding anything to the contrary set forth in paragraph

"10(l)" of this Order, the Debtor's failure to timely deliver a Weekly Report with respect to any

given week shall be an Event of Default not otherwise curable unless cured by the Debtor's

delivery of such Weekly Report no later than Wednesday after it was originally due along with

the timely delivery of the Weekly Report required to be delivered on that Wednesday (e.g., if the

Weekly Report for the week of July 8th is not delivered on or before July 13th, it shall be an

uncurable Event of Default if Weekly Reports for the weeks of July 8th and July 15th are not

delivered on or before July 20th).  All written reports provided by the Debtor to Agent shall be

certified by an officer of the Debtor acceptable to Agent to be accurate to the best of such

officer's knowledge, information and belief, and copies of such written reports shall be

contemporaneously provided to any Committee.

      13.    Agent shall have the right, at any time during the Debtor's normal business hours

or as otherwise agreed by the parties, to inspect, audit, examine, check, make copies of or

extracts from the books, accounts, checks, orders, invoices, bills of lading, correspondence and

other records of the Debtor, and to inspect, audit and monitor all or any part of the Adequate

Protection Collateral and the Debtor's business premises, and the Debtor shall make all of same

reasonably available to Agent and Agent's representatives, and the Debtor shall cause its officers

(including without limitation any chief restructuring officer or similar officer), employees,

retained professionals (including without limitation attorneys, accountants, investment bankers,

financial restructuring consultants, and liquidating agents) and other representatives, to cooperate

with Agent and its representatives, for such purposes.  The Agent, without being deemed to be in

control of, or a fiduciary for, the Debtor, and without obtaining prior consent from the Debtor,

may discuss the Debtor's books and records, the Adequate Protection Collateral, the Approved

Budget and the preparation thereof, the Debtor's business operations, and the Debtor's

bankruptcy case, and engage in communications with respect thereto, with the Debtor's board of

directors and its counsel, CEO, any chief restructuring officer or similar officer if retained, the

Asset Disposition Agent, and any other employees and representatives that the Debtor may

designate in its discretion, and make observations and recommendations to such persons

regarding such matters, and the Debtor shall cause such persons to cooperate with Agent and its

representatives in such discussions and communications.  The foregoing is without prejudice to,

and shall not be deemed a waiver of, the rights of Agent to seek examination of the Debtor

pursuant to Fed. R. Bankr. P. 2004 or otherwise.

14.    For purposes of this Order, (a) "Proceeds" shall mean any and all payments,

proceeds or other consideration realized upon the sale, liquidation, realization, collection or other

manner of disposition of the Adequate Protection Collateral, whether in the ordinary course of

the Debtor's businesses (including without limitation accounts, credit card receivables, and other

proceeds arising from the Debtor's sales of goods and/or performance of services) or other than

in the ordinary course of the Debtor's businesses, and (b) "Disposition" shall mean any sale,

liquidation, realization, collection or other manner of disposition of Adequate Protection

Collateral other than in the ordinary course of the Debtor's businesses, including without

limitation any sale authorized pursuant to Bankruptcy Code § 363 and/or any Chapter 11 plan.

15.    The Debtor shall maintain in full force and effect the deposit, clearing, dominion,

lockbox, and similar accounts maintained by or on behalf of the Debtor pursuant to the

Prepetition Credit Agreement for the collection of Proceeds obtained in the ordinary course of

the Debtor's businesses (the "Collection Accounts"), and the cash management systems, treasury

management systems, and payment procedures under which such accounts and systems are

administered (the "Collection Procedures").  In furtherance of the foregoing, all financial

institutions at which the Debtor's Blocked Accounts and/or Depository Accounts are maintained

(as all such terms are defined in the Prepetition Credit Agreement), and all other financial

institutions as were involved in the maintenance and implementation of the Collection Accounts

and Collection Procedures on the Petition Date, are ordered and directed to act in accordance

with all deposit account control agreements as were in force on the Petition Date,

notwithstanding the commencement of the Debtor's Chapter 11 case on the Petition Date.

16.     The Debtor and any successors to the Debtor, including without limitation any

successor trustee or trustees, shall assign or direct to the Agent any and all Proceeds realized in

any Disposition of any Adequate Protection Collateral, and immediately deliver any and all such

Proceeds which come into their possession to the Agent in the form received; provided, however,

that the foregoing shall be subject in all respects to (a) payment of the Permitted Expenses

(including without limitation the funding of the "Administrative Reserve" as set forth in the

Approved Budget and the payment of Permitted Expenses therewith), and (b) the priorities of

Liens set forth by this Order, provided that with respect to Senior Third Party Liens any such

Liens have been timely asserted by the holders thereof prior to the Disposition of any Adequate

Protection Collateral that is subject thereto.  No further order of the Court shall adversely affect

the rights of the Agent to timely receive such Proceeds in accordance with the provisions of this

paragraph except as may otherwise be agreed to by the Agent.  The foregoing is without

prejudice to the rights of (a) the Agent, the Committee, or any other party to object to any

proposed Disposition, (b) any third party to timely assert prior to any proposed Disposition that

the allocated Proceeds thereof is encumbered by a Senior Third Party Lien, or (c) the rights of

the Committee and third parties set forth below with respect to a Challenge and the remedies that

may result from a successful Challenge.  The Agent is hereby authorized to credit-bid all or any

of the Obligations at any Disposition of any Adequate Protection Collateral provided that

Permitted Expenses incurred as of the closing date are either paid or reserved for in accordance

with the terms of this Order.

17.     All Proceeds retained by the Agent shall be applied to the repayment of the

Obligations, including without limitation interest accrued with respect thereto to the extent

permitted by the provisions of the Bankruptcy Code, until such obligations are paid in full,

provided, however, that the foregoing shall be subject in all respects to the priorities of Liens set

forth by this Order.  Such applications of Proceeds shall be free and clear of any claim, charge,

assessment or other liability.  Notwithstanding the foregoing, in the event that the Court should

determine by final order that the Prepetition Obligations were under-secured as of the Petition

Date and that such application of Proceeds unduly advantaged the Secured Parties, then such

applications of Proceeds shall be deemed to have been applied first in reduction of the Adequate

Protection Claim and thereafter in reduction of the principal amount of the Prepetition

Obligations, and thereafter treated or recovered in such manner as may be required by such final

order or as otherwise determined by the Court after notice to the Agent and a hearing.

18.     Without prejudice to the rights of third parties to the extent set forth in the

following paragraph of this Order:

(a)     the Admissions shall be binding upon the Debtor in all circumstances;

(b)    the validity, extent, priority, perfection, enforceability and non-avoidability of the Secured Parties' prepetition claims and Liens against the Debtor and its assets shall not be subject to challenge by the Debtor, provided however that the foregoing shall be without prejudice to the Debtor's ability to dispute the calculated amounts of the Prepetition Obligations, the Adequate Protection Claim, or any unsecured deficiency claims asserted by the Secured Parties in any proofs of claim or other publicly filed documents;

(c)    the Debtor shall not seek to avoid or challenge (whether pursuant to Chapter 5 of the Bankruptcy Code or otherwise) any transfer made by or on behalf of the Debtor to or for the benefit of the Secured Parties prior to the Petition Date; and

(d)    the Debtor hereby releases and waives all defenses, affirmative defenses, counterclaims, claims, causes of action, recoupments, setoffs or other rights that it may have to contest:

(1)    any Defaults or Events of Default (as such terms are defined in the Prepetition Credit Agreement) which were or could have been declared by the Agent as of the Petition Date;

(2)    any provisions of the Prepetition Credit Agreement; or

(3)    the conduct of the Prepetition Secured Parties and their respective directors, officers, employees, agents, attorneys and other professionals in administering their respective prepetition lending and business relationships with the Debtor, including without limitation equitable subordination, lender liability, and deepening insolvency claims and causes of action.

The Secured Parties shall have no Carve-Out obligations to the Debtor or to any of the Debtor's

Chapter 11 Professionals with respect to any investigation or litigation (whether threatened or

pending) by the Debtor with respect to any matter released, waived or specified as not subject to

challenge by the Debtor pursuant to this paragraph.  As used in this paragraph, "Debtor" shall

include the Debtor's successors and assigns, including, without limitation, any trustee,

responsible officer, examiner, estate administrator or representative, or similar person appointed

in a case for the Debtor under any chapter of the Bankruptcy Code, but shall not include the

Committee.

19.    Notwithstanding the Debtor's release and waiver set forth in the preceding

paragraph of this Order, the Committee shall have 60 calendar days from the date of its

formation, or such later date as may be agreed to by Agent or otherwise ordered by the Court

prior to the expiration of such 60 day period for cause shown and after notice to the Agent and a

hearing (such period, the "Challenge Period"), to commence an adversary proceeding against the

Secured Parties for the purpose (collectively, a "Challenge") of:

(a)    challenging the validity, extent, priority, perfection, enforceability and

non-avoidability of the Secured Parties' prepetition claims and Liens against the Debtor

and its assets;

(b)    seeking to avoid or challenge (whether pursuant to Chapter 5 of the

Bankruptcy Code or otherwise) any transfer made by or on behalf of the Debtor to or for

the benefit of the Secured Parties prior to the Petition Date; or

(c)    seeking damages or equitable relief against the Secured Parties arising

from or related to their prepetition business and lending relationship with the Debtor,

including without limitation equitable subordination, lender liability and deepening

insolvency claims and causes of action.

The Committee is hereby granted standing to commence a Challenge without further authorizing

order of the Court.  Any other party in interest shall have a Challenge Period of 75 calendar days

from the date of this Order to move the Court for an order granting it standing to commence a

Challenge and to commence a Challenge to the extent that such standing is granted.  Any trustee

appointed or elected in the Debtor's bankruptcy case prior to the expiration of the Challenge

Period set forth in the immediately preceding sentence shall be deemed subject thereto.  All

parties in interest, including without limitation the Committee, that fail to act in accordance with

the time periods set forth in this paragraph shall be, and hereby are, barred forever from

commencing a Challenge.

20.     The Secured Parties' legal and equitable claims, counterclaims, defenses and/or

rights of offset and setoff in response to any such Challenge are reserved, and the ability of a

party to commence a Challenge or seek standing to do so shall in no event revive, renew or

reinstate any applicable statute of limitations which may have expired prior to the date of

commencement of such Challenge.  Despite the commencement of a Challenge, the Secured

Parties' prepetition claims and Liens shall be deemed valid, binding, properly perfected,

enforceable, non-avoidable, not subject to disallowance under Bankruptcy Code § 502(d) and not

subject to subordination under Bankruptcy Code § 510 until such time as a final and non-

appealable judgment order and judgment entered sustaining such Challenge in favor of the

plaintiffs therein.  Nothing contained herein shall limit the Court's ability to fashion an

appropriate remedy should the Court determine, by entry of a final and non-appealable order and

judgment, a Challenge in favor of the plaintiffs therein.  The Secured Parties shall have no

Carve-Out or Carve-Out Amount obligations to any person or entity (including without

limitation the Committee) or to any retained professional of such person or entity with respect to

any potential, contemplated, commenced, or pending Challenge, but the Committee shall not be

precluded from investigating any matter for which a Challenge may be properly commenced.

21.    This Order shall be binding upon and inure to the benefit of the Secured Parties,

the Debtor, and their respective successors and assigns, including, without limitation, any trustee,

responsible officer, examiner, estate administrator or representative, or similar person appointed

in a case for the Debtor under any chapter of the Bankruptcy Code.  Except as set forth herein

with respect to a Challenge and the Carve-Out, no rights are created under this Order for the

benefit of any creditor of the Debtor, any other party in interest in the Debtor's bankruptcy case,

or any other persons or entities, or any direct, indirect or incidental beneficiaries thereof.

22.    The provisions of this Order and any actions taken pursuant hereto shall survive

entry of any orders which may be entered confirming any Chapter 11 plan which may be entered

converting the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code.  The

terms and provisions of this Order, as well as the Liens and claims granted or permitted by this

Order, shall continue notwithstanding any dismissal of the Debtor's bankruptcy case

notwithstanding anything to the contrary set forth in the Bankruptcy Code § 349(b)(3).

23.    To the extent that any of the provisions of this Order shall conflict with any order

of the Court authorizing the Debtor to continue the use of prepetition bank accounts, cash

management systems, treasury management systems, or business forms, or any similar orders,

then this Order is deemed to control and supersede the conflicting provisions therein.  In

furtherance of the preceding sentence, with respect to the Debtor's pre-petition checking, disbursement and/or operating account(s) maintained at PNC as of the Petition Date (the "Bank Accounts"), effective as of the time of commencement of the Debtor's Chapter 11 case on the Petition Date:

(a)     the Debtor is authorized to maintain and continue to use the Bank Accounts, to deposit funds into and withdraw funds from the Bank Accounts by all usual means, including without limitation, checks, wire transfers, automated transfers and other debits, and to treat the Bank Accounts for all purposes as debtor-in-possession accounts;

(b)     PNC is authorized to maintain, service and administer the Bank Accounts and any other accounts opened at PNC subsequent to the Petition Date in accordance with applicable non-bankruptcy law and the service agreements and related documentation between the Debtor and PNC and to enjoy the rights, benefits, Liens and privileges thereof, including without limitation the right to charge treasury management fees, and the automatic stay provisions of Bankruptcy Code § 362 are hereby modified for such purposes;

(c)     no check drawn or issued by the Debtor on the Bank Accounts prior the Petition Date but presented for payment subsequent to the Petition Date shall be honored by PNC unless specifically authorized by order of the Court, and the Debtor shall make no request or demand of PNC for the withdrawal of funds from the Bank Accounts (whether by checks, wire transfers, automated transfers or otherwise) for payment of any pre-petition obligation, unless such has been authorized by order of the Court, and PNC shall have no liability to the Debtor, its estate and/or its creditors to the extent that PNC

honors any request or demand by the Debtor for the withdrawal of funds from the Bank

Accounts contrary to the provisions of this subparagraph, either (i) at the direction of the

Debtor upon which PNC is authorized to rely without further inquiry, (ii) in the good

faith belief that the Court has authorized same or (iii) inadvertently unless such

inadvertence constitutes gross negligence or willful misconduct on the part of PNC.

24.     The Debtor's authorized use of the Adequate Protection Collateral pursuant to this

Order shall be in effect for the period commencing with the Petition Date through and including

the earlier to occur of (i) October 28, 2016 or such later date as is acceptable to Agent, or (ii) the

effective date of any Chapter 11 plan (the "Expiration Date").  Notwithstanding anything to the

contrary set forth in the preceding sentence, if a Final Cash Collateral Order accompanied by an

Approved Budget, both consented to or not objected to by Agent (as the case may be, subject to

the provisions of paragraph "25" of this Order), has not been entered by the Court by the twenty-

eighth day following the date of this Interim Order or such later date as is acceptable to Agent in

its sole and absolute discretion (the "Interim Expiration Date"), then the Expiration Date shall be

the Interim Expiration Date.

25.     To the extent that any of the provisions of this Order shall conflict with any

provisions of the Prepetition Credit Agreement, this Order is deemed to control and shall

supersede the conflicting provision(s), *provided, however*, that nothing in this Order shall amend,

modify or supersede the provisions of the Prepetition Credit Agreement which govern the rights

and obligations of Agent and Lenders as among themselves.

26.     The terms and conditions of this Order shall be effective and immediately enforceable upon its entry by the Clerk of the Court notwithstanding any potential application of Fed. R. Bankr. P. 6004(h) or otherwise.

27.     A final hearing with respect to the Motion is scheduled for June 23, 2016 at 10:00 a.m. (the "Final Hearing") before the Honorable Joel T. Marker, United States Bankruptcy Judge.  The Debtor shall promptly mail copies of this Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with the Court and to the Committee after the same has been appointed.  Any party in interest objecting to the relief sought at the Final Hearing shall file written objections, and serve them on the Debtor's proposed counsel, the Agent's counsel of record, and the U.S. Trustee, on or before June 17, 2016.

---End of Document---

Approved as to form:

HAHN & HESSEN                                    U.S. Trustees Office

/s/ Joshua I. Divack_____                      /s/ Peter J. Kuhn_____
Joshua I. Divack                                 Peter J. Kuhn
*Attorneys for Secured Parties*                  *Trial Attorney for U.S. Trustees Office*

8794674_4