Mona L. Burton, #5399
Sherilyn A. Olsen, #9418
Ellen E. Ostrow, #14743
HOLLAND & HART LLP
222 S. Main Street, Suite 2200
Salt Lake City, UT 84101
Telephone: (801) 799-5800
Fax: (801) 799-5700
solsen@hollandhart.com
mburton@hollandhart.com
eeostrow@hollandhart.com
        *Proposed Attorneys for Debtor-in-Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| In re: | Bankruptcy No. 16-24384 |
|---|---|
| M SPACE HOLDINGS, LLC, | Chapter 11 |
| Debtor. | Honorable Joel T. Marker |

## MOTION FOR ORDER: (1) AUTHORIZING THE SALE OF CERTAIN MODULAR UNITS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (2) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (3) WAIVING THE 14-DAY STAY OTHERWISE APPLICABLE UNDER BANKRUPTCY RULES 6004 AND 6006

Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, and Federal Rules of Bankruptcy Procedure 2002, 6004, and 6006, M Space Holdings, LLC (the "**Debtor**") by and through its counsel, Holland & Hart LLP, hereby respectfully requests an order from the Court: (1) authorizing the sale of certain modular units free and clear of liens, claims, encumbrances, and interests; (2) authorizing assumption and assignment of executory contracts and unexpired leases; and (3) waiving the 14-day stay otherwise applicable under Bankruptcy Rules 6004 and 6006 (the "**Motion**"). In support of the Motion, the Debtor respectfully represents as follows:

1

## STATUS OF THE CASE

1.      On May 19, 2016 (the "**Petition Date**"), the Debtor commenced this case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2.      The Debtor has continued in possession of its property and is operating and managing its business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      No request has been made for the appointment of a trustee or examiner, and an official unsecured creditors' committee was appointed on June 1, 2016 (the "**Committee**").

## JURISDICTION, VENUE, AND STATUTORY PREDICATES

4.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is core within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory bases for the relief requested herein are sections 105(a), 363, and 365 of the Bankruptcy Code.

## RELEVANT BACKGROUND

6.      The Debtor is a provider of turnkey complex modular space solutions for rent and sale. The Debtor's primary client bases are schools and the oil industry. The Debtor owns approximately 2,450 modular/mobile floors. Approximately 1,300 floors are buildings utilized by schools across the country. Approximately 300 of the Debtor's floors are dedicated to housing units for the oil industry in North Dakota. The remaining units are used for commercial building spaces throughout the United States.

2

7.    In order to expand its operations and to provide it with funds necessary to operate its business, the Debtor obtained an asset based line of credit in 2004. In December 2012, the Debtor paid off its prior revolving line of credit and obtained a new revolving line of credit up to the maximum amount of $60,000,000 (the "**Line of Credit**") with PNC Bank, National Association ("**PNC**") as agent (the "**Agent**") for itself and HSBC Bank USA, National Association ("**HSBC**") (collectively, the "**Secured Parties**"). The Line of Credit is secured by substantially all, if not all, of the Debtor's personal property as well as rent derived from modular units "on rent" with the Debtor's lessees (the "**Prepetition Collateral**").

8.    Like other modular space providers in the industry, M Space experienced a significant decline in its commercial and education segments from 2010-2013 due to the economic recession and slowdown. In the Spring of 2012, M Space expanded its market by providing modular housing and office space to the oil and gas industry, primarily in North Dakota. At the time M Space began to expand its business in North Dakota, oil prices were trading at over $90 per barrel.

9.    In late 2014, the Organization of the Petroleum Exporting Countries ("**OPEC**") made a decision to not cut oil production. As a result, oil prices began a steep decline. By December 2015, oil was trading at approximately $37.00 per barrel. By early Spring 2016, M Space began experiencing a substantial decline in rents generated from its North Dakota modular units. At M Space's peak in 2014, the North Dakota units generated monthly rental income in the amount of approximately $440,000 per month. However, by the Spring of 2016, the North Dakota units generated monthly rental income in the amount of approximately $104,000 per month.

10.    Due to the drastic decrease in rent generated from the North Dakota units, M Space was not able to take advantage of other growth opportunities in the modular industry. In addition, several of M Space's large commercial rental projects were ending their term, and M Space was not able to move the units to other projects because it did not have sufficient funds to move, refurbish, and reset the modular units that were either coming off rent or in storage yards.

11.    A detailed factual background of the Debtor's business and operations, as well as the events precipitating the commencement of this Chapter 11 Case, is fully set forth in the *Declaration of Jeffrey D. Deutschendorf in Support of the Chapter 11 Petition and Various First Day Motions* (the "**Deutschendorf Decl.**") [Docket No. 6] filed on the Petition Date and incorporated herein by reference.

12.    The Court entered the Cash Collateral Order on May 25, 2016, *see* Dkt. No. 45, and pursuant to the Cash Collateral Budget, the Debtor must realize approximately $10,500,000 in sales proceeds by June 30, 2016 to avoid an event of default. *See* Dkt. No. 9, Ex. A.

13.    On May 24, 2016, the Court approved the retention and employment of Gordon Brothers Commercial & Industrial, LLC ("**GB**") as the Asset Liquidator for the Debtor. *See* Dkt. No. 43.

14.    Among other assets, the Debtor owns the modular units and other assets (collectively, the "**Assets**") described on the Sale Agreement attached hereto as **Exhibit A** (the "**Agreement**").

15.    Forty-three of the units listed on Exhibit A are on lease to the Alachua School District, with five months remaining on the lease (the "**Alachua Lease**"), and twenty-four units

are on lease to the Nassau School Districts with one month remaining on the lease (the "**Nassau**

**Lease**").

16.    GB estimates the value of the Assets at $1,322,905.

17.    VESTA Housing Solutions, LLC ("**VESTA**") offered to purchase the Assets from

the Debtor "as is" and "where is" for a purchase price of $1,200,000. Pursuant to the offer,

VESTA will assume all unexpired leases and executory contracts related to the Assets, and all

secured parties will provide appropriate lien releases.

18.    GB evaluated the offer and recommended that the Debtor accept the offer subject

to the Court's approval, and the Debtor, in its reasonable business judgment, has determined that

the sale is in the best interest of creditors and the bankruptcy estate.

19.    The Debtor has negotiated the terms of the Agreement[1] by which the Debtor

proposes to sell the Assets to VESTA, subject to Court approval and higher or better offers, on

the terms and conditions set forth in the Agreement.

20.    GB will be paid a commission and its expenses from the proceeds of the proposed

sale pursuant to the Order Authorizing the Retention and Employment of Gordon Brothers

Commercial & Industrial, LLC as Asset Liquidator For the Debtor dated May 24, 2016. *See* Dkt.

No. 43.

21.    All remaining sales proceeds will be disbursed pursuant to the Interim Order

Authorizing Debtor's Use of Collateral and Cash Collateral and Granting Adequate Protection

Claim and Lien and any final order related thereto. *See* Dkt. No. 45.

---

[1] To the extent there are any conflicts between any summary or reference and the Agreement, the terms of
the Agreement shall govern.

## RELIEF REQUESTED

22.    The Debtor proposes to sell the Assets to VESTA subject to higher and better offers. The Debtor intends to utilize the bidding procedures (the "**Bidding Procedures**") attached hereto as **Exhibit B**. Contemporaneously with filing this Motion, the Debtor is seeking Court approval of bidding procedures the Debtor will utilize for post-petition sales in this case, including the proposed VESTA sale (the "**Bid Procedures Motion**"). A hearing on the Bid Procedures Motion is scheduled for June 23, 2016 at 10:00 a.m.  The proposed Bidding Procedures for this Motion are consistent with the bidding procedures described in the Bid Procedures Motion.

23.    The Debtor requests entry of an order approving the proposed sale of the Assets. The Debtor will seek the relief requested in this Motion at a hearing (the "**Sale Hearing**") on July 12, 2016 at 2:00 p.m. The Debtor further requests waiver of the 14-day stay that otherwise would apply under Bankruptcy Rules 6004 and 6006, on the ground that unnecessary expenses would accrue to the estate during that period.

24.    Finally, the Debtor seeks authority to assume, and assign to the Successful Bidder (defined herein), any unexpired leases and executory contracts to the extent the Successful Bidder requests such assumption and assignment in its bid.

**A.    The Agreement**

25.    The Debtor negotiated, in good faith and at arm's length, the proposed sale terms with VESTA, as set forth in the Agreement. VESTA understands that its purchase proposal, as set forth in the Agreement, will serve as the "stalking horse" bid at the Auction (defined herein) and is subject to higher and better offers and this Court's approval.

26.     Under the Agreement, VESTA has offered to purchase the Assets for $1,200,000,

and the Assets will be sold to VESTA free and clear of all liens, claims, interests and any and all

other encumbrances of any kind or nature to the fullest extent possible under 11 U.S.C. § 363(f).

27.     The Agreement represents the highest and best purchase offer (the only purchase

offer) that the Debtor has received to date for the Assets.

28.     As presented in the Debtor's First Day Motions, the Debtor believes that an

orderly liquidation of the Debtor's assets is the best way to maximize the value of the assets and

is in the best interest of creditors and the estate. And, in its business judgment, the Debtor

believes the proposed sale maximizes the value of the Assets.

29.     If an auction is held, VESTA will be deemed a Stalking Horse bidder subject to

higher or better offers without requiring any formal bid protections or a break-up fee that

otherwise could have a chilling effect on the bidding and auction process.

**B.     The Bid Procedures**

30.     The Debtor proposes to further test the marketplace through the proposed bidding

process to allow the Debtor a reasonable and fair opportunity to maximize the value of the

Assets.

31.     The Debtor continues to market the Assets for sale on its website:

http://www.modularinventory.com. GB will also continue to market the Assets for sale through

its marketing efforts to sell the Debtor's assets. Further, the Debtor will provide notice of the

Motion to: (a) all persons reasonably known to the Debtor who have expressed an interest in a

transaction with respect to the Assets during the past year; (b) all persons identified by the

Debtor as potentially having an interest in acquiring all or a portion of the Debtor's business or

assets; (c) all non-debtor parties to relevant executory contracts and unexpired leases; (d) all creditors and other parties in interest listed on the Debtor's mailing matrix, and (e) all known persons asserting a lien, claim, encumbrance or other interest in any of the Assets.

32.     A summary of the proposed Bid Procedures follows, but the actual bid procedures approved by the Court control over any inconsistent description in this summary of those procedures.

33.     The Debtor requests the Court approve the following Bid Procedures:

   a.   To be a Qualified Bidder, such bid must:

      i.   be in writing, be irrevocable, and provide that if it is not the winning bid, it may be accepted nonetheless if the Successful Bidder fails to timely close;

      ii.  be received by Seller no later than the Bid Deadline set forth in the Bid Procedures, and served on the Parties in the manner set forth in the Bid Procedures;

      iii. include a signed short form purchase and sale agreement (the "**Bidder's Purchase Agreement**");

      iv.  be for no less than $1,200,000 cash in U.S. Dollars;

      v.   be accompanied by an earnest money deposit equal to no less than $100,000, such deposit to be either in the form of a certified bank check or a wire transfer to the Debtor to be held in escrow by PNC Bank;

      vi.  not be conditioned upon any contingencies, such as (without limitation) any due diligence investigation, the receipt of financing, or any board of directors, shareholders or other entity approval;

      vii. include evidence of the bidder's financial wherewithal to consummate the purchase;

      viii. not request or entitle the bidder to any transaction or break-up fee, expense reimbursement or similar type of payment; and

      ix.  otherwise comply with the Bid Procedures.

x. If at least one Qualified Bid is received prior to the Bid Deadline, that the Debtor, through the services of GB, hold an auction on the date and time and in the location set forth in the Bid Procedures. If no Qualified Bid is received, the Assets shall be sold free and clear of Interests to VESTA for $1,200,000.

34.    In connection with the sale of the Assets, the Debtor seeks authority to assume and assign certain unexpired leases and executory contracts to the Successful Bidder pursuant to § 365 of the Bankruptcy Code. In particular, the Debtor seeks authority to assume and assign to the Successful Bidder the contracts and leases so identified in connection with the Agreement.

35.    The contracts and leases to be assumed are identified in Exhibit A. The Debtor does not believe there are any obligations owed by the Debtor under the assumed leases that need to be cured.

## BASIS FOR RELIEF

### A.    The Bid Procedures

36.    Bankruptcy Code § 363 provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." Bankruptcy Code § 363(b). To approve the use, sale or lease of property outside of the ordinary course of business, a debtor must demonstrate: "(1) that a sound business reason exists for the sale; (2) there has been adequate and reasonable notice to interested parties, including full disclosure of the sale terms and the Debtor's relationship with the buyer; (3) that the sale price is fair and reasonable; and (4) that the proposed buyer is proceeding in good faith." *In re Medical Software Solutions*, 286 B.R. 431, 439–40 (Bankr. D. Utah 2002); *see also Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (identifying the "sound business purpose" test); *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d

143, 145-47 (3d Cir. 1986) (implicitly adopting the articulated business justification test of Lionel, and adding the "good faith" requirement).

37.    Bankruptcy courts generally defer to a debtor's reasonable business judgment regarding the sale of estate assets, unless such decision is arbitrary and capricious. *See In re Curlew Valley Assocs.*, 14 B.R. 506, 511–13 (Bankr. D. Utah 1981).

38.    Courts generally will not second-guess a debtor's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the Code." *Id.* at 513–14 (citation omitted).

39.    The Debtor has sound business reasons for the proposed sale, which was evaluated and recommended by GB. The Debtor has concluded that a prompt sale of the Assets is necessary to avoid an event of default under the Cash Collateral Order and to maximize the value of its assets for the benefit of creditors and the estate. A sale by auction, using reasonable procedures as set forth in the Bid Procedures, presents the best opportunity to realize the maximum value of the Assets.

40.    The Debtor believes that the value of the Assets and the consummation of the proposed sale will be seriously jeopardized unless the Debtor, through GB, can begin the sale process contemplated in the Bid Procedures as expeditiously as possible.

41.    The Debtor submits that this Motion and the proposed Bid Procedures will provide adequate notice to parties in interest of the proposed sale. Among other things, the Debtor proposes to provide notice and sufficient time for parties in interest to submit objections and for bidders to formulate and submit competing proposals.

42.     The Debtor believes the offer from VESTA, as evaluated and recommended by GB, represents the fair value of the Assets. Also, the Debtor believes that the proposed sale price obtained through the Auction will likely represent fair value for the Assets. The Debtor, through the services of GB, will use reasonable best efforts to publicize an auction and the Bid Procedures. The Debtor believes that exposing the Assets to the market in this manner will also indicate the true value of the Assets given the critical timing issues at play.

43.     The Debtor has engaged in good-faith arm's length negotiations with VESTA, and submits that VESTA has also negotiated in good faith and at arm's length to acquire the Assets. The Debtor submits that VESTA has proceeded in good faith and is offering consideration that constitutes fair value for the Assets. With respect to the "value" requirement, the Debtor estimates based on GB's Sale Valuation, that the current value of the Assets is $1,322,905.

44.     As noted above, the Agreement is subject to higher and better offers, and VESTA has not received any compensation or additional bid protections from the Debtor for its role as a stalking horse bidder. Therefore, the Debtor does not believe that VESTA has engaged in any conduct that would preclude this Court from making a "good faith" finding at the hearing to approve the proposed sale. Accordingly, the Debtor requests that the Court find that the Bid Procedures, VESTA, and the Agreement meet the four requirements set forth in *Medical Software Solutions*.

**B.     The Sale Satisfies the Requirements of Bankruptcy Code § 363(f) for a Sale Free and Clear of Liens, Claims, Encumbrances and Interests**

45.     Pursuant to Bankruptcy Code § 363(f), a debtor may sell property free and clear of any lien, claim, or interest in such property, if, among other things: applicable nonbankruptcy law permits sale of such property free and clear of such interest; such entity consents; such

11

interest is a lien and the price at which such property is sold is greater than the aggregate value of

all liens on such property; such interest is in bona fide dispute; or such entity could be

compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

46.    Because Bankruptcy Code § 363(f) is drafted in the disjunctive, satisfaction of

any one of the five requirements will be sufficient to permit the sale of the Assets free and clear

of liens, claims, encumbrances, pledges, mortgages, security interests, charges, options, and

other interests (collectively, the "**Interests**").

47.    The Debtor is not currently aware of any Interests in the Assets other than the

liens of the Secured Parties. In the event that unanticipated Interests are asserted against the

Assets, the Debtor believes that the holder of any such Interests could be compelled to accept a

money satisfaction of such Interests in legal or equitable proceedings in accordance with

Bankruptcy Code § 363(f)(5). The Debtor proposes that any Interests would attach to the net

proceeds of the proposed sale. Accordingly, the Assets may be sold free and clear of any and all

Interests pursuant to Bankruptcy Code § 363(f)(5).

48.    Further, the Assets also may be sold free and clear of any Interests pursuant to

Bankruptcy Code § 363(f)(3). That section permits a debtor to sell property free and clear of

liens if "such interest is a lien and the price at which such property is to be sold is greater than

the aggregate value of all liens on such property." While the Debtor acknowledges that courts are

divided on the interpretation of this section, the better view is that "value" means the economic

value of the liens on the property, rather than the face amount of the debts secured by the

property. *See, e.g.*, *In re Beker Indus. Corp.*, 63 B.R. 474, 476 (Bankr. S.D.N.Y. 1986); *In re*

*Terrace Gardens Park Partnership*, 96 B.R. 707, 713 (Bankr. W.D. Tex. 1989); *In re Oneida*

*Lake Development, Inc.*, 114 B.R. 352, 357 (Bankr. N.D.N.Y. 1990); *In re Equity Management*

*Systems*, 149 B.R. 120, 123 (Bankr. S.D. Iowa 1993); *In re Collins*, 180 B.R. 447, 451 (Bankr.

E.D. Va. 1995).

49.    GB, as an industry expert, has valued the Assets and recommended acceptance of

the offer from VESTA. Further, the Debtor will expose the Assets to the market through the Bid

Procedures, and the market will dictate the value of the Assets at the Auction. Therefore, the

requirements of Bankruptcy Code § 363(f)(3) will be satisfied. The Debtor submits that

Bankruptcy Code § 363(f) will be satisfied by any sale of the Assets and expressly reserve all

rights thereto including, without limitation, the arguments made in this Motion.

**C.    The Assumption and Assignment of Executory Contracts and Unexpired Leases
Should Be Authorized**

50.    Bankruptcy Code § 365(f)(2) provides that:

> [t]he trustee may assign an executory contract or unexpired lease of the debtor
> only if— (a) the trustee assumes such contract or lease in accordance with the
> provisions of this section; and (b) adequate assurance of future performance by
> the assignee of such contract or lease is provided, whether or not there has been a
> default in such contract or lease.

51.    Under Bankruptcy Code § 365(a), a trustee, "subject to the court's approval, may

assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

Section 365(b)(1) of the Bankruptcy Code, in turn, codifies the requirements for assuming an

unexpired lease or executory contract of a debtor. This subsection provides as follows:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the
>
> debtor, the trustee may not assume such contract or lease unless, at the time of
>
> assumption of such contract or lease, the trustee –

(A) cures, or provides adequate assurance that the trustee will promptly

cure, such default;

(B) compensates, or provides adequate assurance that the trustee will

promptly compensate, a party other than the debtor to such contract or lease, for

any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such

contract or lease.

11 U.S.C. § 365(b)(1).

52.    The meaning of "adequate assurance of future performance" depends on the facts

and circumstances of each case, but should be given a "practical, pragmatic construction." *See,

e.g.*, *EBG Midtown South Corp. v. McLaren/Hart Env. Engineering Corp. (In re Sanshoe

Worldwide Corp.)*, 139 B.R. 585, 593 (S.D.N.Y. 1992); *In re Prime Motor Inns Inc.*, 166 B.R.

993, 997 (Bankr. S.D. Fla. 1994) ("[a]lthough no single solution will satisfy every case, the

required assurance will fall considerably short of an absolute guarantee of performance");

*Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J.

1988).

53.    Among other things, adequate assurance may be provided by demonstrating the

assignee's financial health and experience in managing the type of enterprise or property

assigned. *See, e.g.*, *In re Bygaph, Inc.*, 56 B.R. 596, 605–06 (Bankr. S.D.N.Y. 1986) (reasoning

that adequate assurance of future performance is present when prospective assignee of lease from

debtor has financial resources and has expressed willingness to devote sufficient funding to

business in order to give it strong likelihood of succeeding).

14

54.     The Debtor does not believe that any defaults exist under the contracts and leases

to be assumed and assigned under the Agreement other than as set forth in the applicable exhibit

or schedule thereto. To the extent that any other defaults exist under any executory contract or

unexpired lease that is to be assumed and assigned in connection with the sale, the Debtor or the

Successful Bidder will cure or provide adequate assurance of a cure of any such default prior to

such assumption and assignment. At the Sale Hearing, the Debtor will further adduce facts

demonstrating the financial wherewithal of the Successful Bidder, its industry experience, and its

willingness and ability to perform under the contracts to be assumed and assigned to it.

55.     Therefore, the Court and other interested parties will have sufficient opportunity

to evaluate and, if necessary, challenge the ability of the Successful Bidder to provide adequate

assurance of future performance under the contracts to be assumed.

56.     Thus, the Court will have a sufficient basis to authorize the Debtor to assume and

assign contracts as is set forth in the Agreement.

**D.      Cause Exists to Waive the 14 Day Stay Otherwise Applicable Under Bankruptcy
Rules 6004 and 6006**

57.     Bankruptcy Rule 6004(h) provides that unless the Court orders otherwise, all

orders authorizing the sale of property under Bankruptcy Code § 363 are automatically stayed for

14 days after entry of the order. Similarly, under Bankruptcy Rule 6006(d), unless the Court

orders otherwise, all orders authorizing the assignment of contracts or unexpired leases are

automatically stayed for 14 days after entry of the order.

58.     The Debtor submits that cause exists to waive the automatic 14-day stay

otherwise applicable under Bankruptcy Rules 6004(h) and 6006(d). The Cash Collateral Budget

requires that the Debtor realize gross sales proceeds of $10,500,000 by June 30, 2016. VESTA

has bargained in good faith for a relatively short timeline for the proposed Sale, but more importantly, the Debtor requires this relatively short timeline or it will risk conversion. Accordingly, a 14-day stay likely would prevent the Debtor from selling the Assets with the premium it expects to receive until the proposed sale is closed. Moreover, if the closing is postponed, the sale may be lost. Closing the sale at the earliest possible time will maximize the value of the Assets for the benefit of creditors and the estate.

59.    WHEREFORE, the Debtor respectfully requests entry of an order (i) authorizing the sale free and clear of liens, claims, encumbrances and interests; (iii) authorizing assumption and assignment of executory contracts and unexpired leases; (iv) waiving the 14-day stay otherwise applicable under Bankruptcy Rules 6004 and 6006; and (v) granting the Debtor such other and further relief as the Court deems just and proper.

Dated: June 16, 2016

Respectfully submitted,

HOLLAND & HART LLP

*/s/ Sherilyn A. Olsen*
Sherilyn A. Olsen
Mona L. Burton
Ellen E. Ostrow
222 S. Main Street, Suite 2200
Salt Lake City, UT 84101
*Proposed Attorneys for Debtor-in-Possession*

8869283_1

16

**Exhibit A**

# M|S P A C E.

**SALES AGREEMENT**

This Sales Agreement ("Agreement") dated _____, 2016 is entered into by and between M Space Holdings, LLC located at 629 Parkway Drive, Park City, UT 84098 ("Seller") and VESTA Housing Solutions, LLC located at 335 E. Maple, Birmingham, MI, 48009 ("Buyer"), collectively referred to as the "parties".

Pursuant to the mutual covenants and agreements set forth herein and for other good and valuable consideration, the Buyer and Seller covenant and agree to be bound as set forth below.

Buyer agrees to purchase from Seller one or more modular and/or pre-fabricated structures ("Building(s)") as detailed more particularly as follows:

**BUILDING(S):**

| | |
|---|---|
| Description (including quantity, type, size & serial numbers) | 34 - Modular Classrooms 24x36 (Wet): CR00075 – 12897AB; CR00111 – 16030AB; CR00112 – 16031AB; CR00113 – 16032AB; CR00118 – 16037AB; CR00185 – 16046AB; CR00186 – 16047AB; CR00187 – 16048AB; CR00188 – 16049AB; CR00189 – 16050AB; CR00190 – 16051AB; CR00191 – 16052AB; CR00192 – 16053AB; CR00194 – 16055AB; CR00195 – 16056AB; CR00196 – 16057AB; CR00197 – 16058AB; CR00198 – 16059AB; CR00199 – 16060AB; CR00200 – 16061AB; CR00225 – 16028AB; CR00226 – 16042AB; CR00276 – 16062AB; CR00278 – 16064AB; CR00279 – 16065AB; CR00283 – 16069AB; CR00284 – 16070AB; CR00285 – 16071AB; CR00327 – 16516AB; CR00328 – 16517AB; CR00334 – 16077AB; CR00387 – 16846AB; CR00389 – 16848AB; CR00535 – 16840AB <br><br> 9 - Modular Classrooms 24x36 (Dry): CR00290 – 16014AB; CR00291 – 16015AB; CR00292 – 16016AB; CR00293 – 16017AB; CR00294 – 16018AB; CR00295 – 16019AB; CR00296 – 16020AB; CR00299 – 16023AB; CR00300 – 16024AB |
| Location | Alachua County Schools – Various Locations |
| Description (including quantity, type, size & serial numbers) | 1 – Modular Restroom Bldg – 24x40: RR00001 – 52007-01/02 <br> 5 – Modular Classrooms – 24x36 (Dry): CR00087 – 15999AB; CR00089 – 16001AB; CR00253 – 16007AB; CR00297 – 16021AB; CR00298 – 16022AB <br> 18 – Modular Classrooms – 24x36 (Wet):  CR00114 – 16033AB; CR00115 – 16034AB; CR00116 – 16035AB; CR00117 – 16036AB; CR00330 – 16073AB; CR00331 – 16074AB; CR00332 – 16075AB; CR00333 – 16076AB; CR00386 – 16845AB; CR00388 – 16847AB; CR00390 – 16849AB; CR00391 – 16850AB; CR00392 – 16851AB; CR00393 – 16852AB; CR00394 – 16853AB; CR00395 – 16854AB; CR00400 – 16759AB; CR00531 – 16748AB |
| Location | Nassau County Schools – Various Locations |

**COSTS:**

| | |
|---|---|
| Building(s) | $1,200,00.00 |
| Delivery/Freight/Set-up | N/A |
| Total Contract Price (Does not include applicable State and Local Taxes.  Purchaser is responsible for payment of all applicable sales tax) | $1,200,000 |

# M|S P A C E.

**SALES AGREEMENT**

☐ **(Check If Applicable)** Buyer acknowledges the Proposal, Purchase Order or any other documents attached to this Agreement and initialed by Buyer and Seller are incorporated by reference to the Agreement, and become a part of the Agreement.

<u>Payments will be made to Seller as follows:</u>

100 % of Contract Price within 3 business days of (i) entry of a final Bankruptcy Court order approving the sale and (ii) the completion of any auction process.

<u>Additional Terms and Conditions:</u>  The Building(s) is being sold "As Is".  Seller is NOT providing any warranties, expressed or implied.  Buyer understands it is purchasing the Building "As Is", in its present condition and at its current location.  Buyer is solely responsible for compliance with any applicable building codes.  Seller has filed for protection under the bankruptcy laws of the United States of America, Chapter 11.  As a result, Seller must seek approval from the Bankruptcy Court with jurisdiction to approve and thereafter finalize the sale in accordance with the terms of this Agreement.  This Agreement is subject to higher and better offers.  At any time, prior to the closing contemplated by this Agreement, the Seller may receive and accept an offer(s) from third parties to purchase the Buildings.   Whether or not an offer is higher and/or better shall be determined by the Seller at its sole discretion.  The Buyer shall be entitled to match any higher and/or better offer received by the Seller.  If the Bankruptcy Court does not approve of this sale and/or the Seller accepts a higher and/or better offer from a third party for the Buildings, the parties shall maintain no obligations, performance or otherwise, under this Agreement, and this Agreement shall be void *ab initio*.  At the time of closing following Seller obtaining approval from the Bankruptcy Court, the parties agree that the Court Order shall include a full release of any and all liens or encumbrances, and that all leases, executory contracts as well as the H-GAC contract, relative to the units purchased shall be assigned to Buyer, but with respect to the H-GAC contract only to the extent of Seller's procurement rights for Nassau County Florida and Alachua County Florida.   Accordingly, and for the avoidance of doubt with respect to the H-GAC Contract assignment, Buyer expressly understands and acknowledges that Seller's assignment is limited to payments for which Seller was/is entitled to receive pursuant to the purchase orders issued to Seller by Nassau County Florida and Alachua County Florida for the subject units.     Buyer will indemnify, defend and hold Seller harmless for any and all losses, damages, liabilities, demands, claims, suits, actions, costs and expenses, including, without limitation, attorney's fees arising out of or in connection with this purchase and/or Buyer's use or occupancy of the Building(s).  The parties acknowledge the Buildings are subject to existing leases with current occupants.  The Seller does hereby agree to, and will execute all reasonable documentation necessary therefor, to unconditionally effectuate the assignment of Seller's interests, right and title in and to such existing leases without reservation          subject          to          the          stipulations          set          forth          above.

<u>Time From Acceptance to Bankruptcy Court Approval.</u>  During the period from when Seller executes this agreement until final Bankruptcy Court Approval, all rental payments due shall continue to accrue but be held by the respective customers and paid to Buyer upon closing on the purchase described herein final bankruptcy court approval or paid to Seller in the event the Buyer fails to purchase the Buildings.

IN WITNESS WHEREOF, the parties, by their duly authorized officers, have signed, sealed and delivered this Agreement on the date noted above and below:

Seller: **M Space Holdings, LLC**                                    Buyer: **VESTA Housing Solutions, LLC**

Signature: _____        Signature: _____

Name (Printed): <u>Jeff Deutschendorf</u>                        Name (Printed): <u>Daniel C. McMurtrie</u>

Title: <u>CEO</u>                                                              Title: <u>CEO</u>

Date: _____            Date: _____

**Exhibit B**

## BID PROCEDURES

Set forth below are the bid procedures (the "**Bid Procedures**") to be employed with respect to the prospective sale of Assets[1] of M Space Holdings, LLC (the "**Debtor**") in connection with Bankruptcy Case No. 16-24384 (the "**Bankruptcy Case**") pending in the United States Bankruptcy Court for the District of Utah (the "**Bankruptcy Court**"). The Debtor will seek entry of an order from the Bankruptcy Court authorizing and approving the Sale to the Qualified Bidder(s) (as hereinafter defined) determined by the Debtor, in the exercise of its reasonable business judgment after consultation with its advisors, to have made the highest or otherwise best offer(s) to purchase the Assets (the "**Successful Bidder(s)**").

### Stalking Horse Bid

The Debtor has received a "stalking horse" bid proposal (the "Stalking Horse Bid") from VESTA Housing Solutions, LLC ("**VESTA**") as set forth in that certain Sales Agreement (the "**Agreement**"), a copy of which will be provided together with these Bid Procedures.[2]

Under the terms of the Agreement, VESTA has offered to purchase the Assets in the amount of $1,200,000, subject to approval of the Bankruptcy Court and subject to higher or better offers.

### Reservation of Rights

The Debtor reserves the right to entertain bids for the Assets, the Assets together with other assets or property of the Debtor, or to sell portions of the Assets and business in other lots, as the Debtor determines in the exercise of its reasonable business judgment that an alternative sale would result in the highest or otherwise best collective value for the Assets.

### The Bidding Process

The Debtor shall (i) determine whether any person is a Qualified Bidder (defined below), (ii) negotiate any offers made to purchase the Assets, and (iii) determine the Successful Bidder(s) (defined below) (collectively, the "**Bidding Process**"). Any person who wishes to participate in the full Bidding Process must first become a Qualified Bidder. Neither the Debtor nor its representatives shall be obligated to furnish any information of any kind whatsoever to any person who is not a Qualified Bidder. For the avoidance of doubt and notwithstanding anything to the contrary in the Bid Procedures, VESTA is a Qualified Bidder for all purposes, as applicable, and is authorized, but not directed, to participate in the full Bidding Process. The Debtor shall have the right to adopt such other rules for the Bidding Process which, in its

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed in the Motion or the Agreement, as applicable.

[2] Any summary or reference to the Agreement or the Stalking Horse Bid is qualified in its entirety by the Agreement itself, as provided together with these Bid Procedures. To the extent there are any conflicts between any summary or reference and the Agreement, the terms of the Agreement shall govern.

reasonable business judgment, will better promote the goals of the Bidding Process and which are not inconsistent with any of the other provisions hereof or of any Bankruptcy Court order.

## Participation Requirements

To be a Qualified Bidder, such bid must provide to the Debtor by no later than 3 days prior to the Bid Deadline (defined below):

i.   be in writing and irrevocable and provide that if it is not the winning bid, it may be accepted nonetheless if the Successful Bidder fails timely to close;

ii.   be received by Seller no later than the Bid Deadline set forth in the Bid Procedures, and served on the Parties in the manner set forth in the Bid Procedures;

iii.   include a signed short form purchase and sale agreement (the "**Bidder's Purchase Agreement**");

iv.   be for no less than $1,205,000 cash in U.S. Dollars;

v.   be accompanied by an earnest money deposit equal to no less than $100,000, such deposit to be either in the form of a certified bank check or a wire transfer to the Debtor to be held in escrow by PNC Bank, N.A.;

vi.   not be conditioned upon any contingencies, such as (without limitation) any due diligence investigation, the receipt of financing, or any board of directors, shareholders or other entity approval;

vii.   include evidence of the bidder's financial wherewithal to consummate the purchase;

viii.   not request or entitle the bidder to any transaction or break-up fee, expense reimbursement or similar type of payment; and

ix.   otherwise comply with the Bid Procedures.

A "**Qualified Bidder**" is a Potential Bidder that submits the documents, information and deposit described in subparagraphs (i) through (ix) above, whose financial information demonstrates the financial capability of the Qualified Bidder to consummate the proposed transaction, and that the Debtor determines is reasonably likely (based on availability of financing, experience and other considerations) to be able to consummate the sale if selected as the Successful Bidder. The Debtor will notify potential Qualified Bidders who submit the information and deposit above whether they are Qualified Bidders within 1 business day after receiving such submissions.

## Due Diligence

The Debtor shall not be obligated to furnish any due diligence information after the Bid Deadline (as defined below). Neither the Debtor nor any of its representatives are obligated to

furnish any information relating to the Assets to any person. Qualified Bidders are advised to exercise their own discretion before relying on any information regarding the Assets.

## Bid Deadline

A Qualified Bidder desiring to make a Qualified Bid shall deliver the Required Bid Documents (as defined below) to the Debtor as follows: Sherilyn Olsen, counsel for Debtor, c/o Holland & Hart, LLP, 222 South Main Street, Ste. 2200, Salt Lake City, Utah 84101, by no later than **4:00 p.m. (Prevailing Mountain Time) on July 1, 2016** (the "**Bid Deadline**"). The Debtor may extend the Bid Deadline once or successively, with the prior consent of VESTA, but is not obligated to do so.

All bids must include the following documents (the "**Required Bid Documents**"):

A letter stating that (1) the bidder's offer is irrevocable until the earlier of (a) two business days after the assets for which the bidder is bidding have been disposed of pursuant to these Bid Procedures, or (b) thirty days after the Sale Hearing; (2) the bidder will be prepared and agrees to close the sale transaction by no later than 5 days after the Auction Date, subject to the prior entry of an order of the Court approving the Sale; and (3) the bid is not conditioned on bid protections or any expense reimbursement (including any break-up fee, termination fee or similar type of payment or reimbursement) and, by submitting a bid, the bidder waives the right to pursue a substantial contribution claim under 11 U.S.C. § 503 related in any way to the submission of its bid or the Bidding Process;

An executed copy of an asset purchase agreement in form acceptable to the Debtor and substantially similar to the Agreement (a "**Bidder's Purchase Agreement**") and a mark-up comparison against the Agreement showing any proposed changes to the Agreement; and

A list of all executory contracts and unexpired leases of the Debtor that the bidder wishes to receive through assumption and assignment under Bankruptcy Code § 365, including a description of each contract or lease, the addresses of all counterparties to each contract, and any cure amount that the bidder believes to be due.

The Debtor will consider a bid only if the bid is on terms that are not conditioned on obtaining financing or on the outcome of unperformed due diligence by the bidder. A bid received from a Qualified Bidder that includes all of the Required Bid Documents and meets the other requirements set forth above is a "**Qualified Bid.**"

## "As Is, Where Is"

The sale of any or all of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor, its agents or the Debtor's estate except to the extent set forth in the applicable Bidder's Purchase Agreement(s) of the Successful Bidder(s) as accepted by the Debtor. Except as otherwise provided in such

agreements, all of the Debtor's right, title and interest in and to the identified assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "**Interests**") in accordance with section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale(s) of the assets.

Each bidder shall be deemed to acknowledge and represent that it has had an opportunity to inspect and examine the assets and to conduct any and all due diligence it deems necessary regarding the assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the assets, or the completeness of any information provided in connection with the assets or the Bidding Process, except as expressly stated in these Bid Procedures or, as to the Successful Bidder(s), the respective Bidder's Purchase Agreement(s).

## Auction

If, in addition to the Agreement, the Debtor receives one or more additional Qualified Bids on or prior to the Bid Deadline, the Debtor shall conduct an auction (the "**Auction**") with respect to any Assets as to which a Qualified Bid has been received. The Auction shall take place on **July 6, 2016 at 9:30 a.m.** (Prevailing Mountain Time) at the offices of Holland & Hart LLP, 222 S. Main St., Suite 2200, Salt Lake City, UT 84101. At the Debtor's discretion, Qualified Bidders may participate in the Auction by telephone.

The Debtor may commence the Auction by entertaining bids from Qualified Bidders for the Assets or groupings of certain of the Assets and/or other assets of the Debtor. The Debtor thereafter may offer the Assets in such lots in such successive rounds as the Debtor reasonably determines to be appropriate so as to obtain the highest or otherwise best bid or combination of bids for the assets but only to the extent consistent with applicable provisions of the Cash Collateral Order. The Debtor also may set opening bid amounts in each round of bidding as the Debtor reasonably determines to be appropriate. VESTA has no obligation to purchase less than all the Assets identified in the Agreement.

Upon conclusion of the Auction, the Debtor, in consultation with its advisors, shall (i) review and evaluate each Qualified Bid and other potentially higher or better bids obtained at the Auction on the basis of financial and contractual terms and the factors relevant to the sale process in the Debtor's reasonable discretion, including factors affecting the speed and certainty of consummating the Sale, and (ii) identify the highest or otherwise best offer or group of offers for the Assets in the Debtor's reasonable discretion (the "**Successful Bid(s)**"). At the Sale Hearing, the Debtor will present to the Bankruptcy Court for approval the Successful Bid(s). The Debtor may adopt rules for the Bidding Process at the Auction that, in its reasonable business judgment, will better promote the goals of the Bidding Process and that are not inconsistent with any provisions of the Bankruptcy Code, any Bankruptcy Court order, or these Bid Procedures.

### Acceptance of Qualified Bids

The Debtor shall sell the Assets to the Successful Bidder(s) upon entry of an order of the Bankruptcy Court approving the Sale. The Debtor's presentation to the Bankruptcy Court for approval of a Sale to a particular Successful Bidder does not constitute the Debtor's acceptance of the bid. The Debtor will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court upon entry of an appropriate order after the Sale Hearing.

### Sale Hearing

The Sale Hearing is presently scheduled to take place on **July 12, 2016, at 2:00 p.m.** before the Honorable Joel T. Marker at the United States Bankruptcy Court for the District of Utah, located in Room 341 of the Frank E. Moss United States Courthouse, 350 South Main Street, Salt Lake City, Utah. The Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing. At the Sale Hearing, the Debtor shall present to the Bankruptcy Court for approval the Successful Bid(s) for the Assets.

Following the Sale Hearing approving the Sale of the Assets to a Successful Bidder(s), if such Successful Bidder(s) fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder(s), the next highest or otherwise best bid resulting from the Auction, as disclosed at the Sale Hearing, shall be deemed to be the Successful Bid and the Debtor shall be authorized to effectuate such Sale without further order of the Bankruptcy Court.

### Miscellaneous

The Debtor may (a) determine, in its reasonable business judgment, which Qualified Bid(s) or other bid presented at the Auction by a Qualified Bidder is the highest or otherwise best offer; and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Sale to a Successful Bidder, any bid that, in the Debtor's reasonable discretion, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of sale, or (iii) contrary to the best interests of the Debtor, its estate, and its creditors. At or before the Sale Hearing, the Debtor may impose such other terms and conditions as it may reasonably determine to be in the best interests of the Debtor's estate, creditors and other parties in interest and that are not inconsistent with any provisions of the Bankruptcy Code, any Bankruptcy Court order, or these Bid Procedures.

---END OF BID PROCEDURES---

8885362_1